## The Beattyville Company v. Tyrone Coal Company.

(Decided October 24, 1924.)

### Appeal from Lee Circuit Court.

1. Deeds—Construed According to Intention of Parties at Time of Execution.—Deed must be construed and interpreted according to intention of parties at time of execution.

2.  Deeds—Court May Look to Situation of Parties where Language
is Obscure, Indefinite, or Ambiguous.—If language of deed is
obscure, indefinite, or ambiguous, courts may look to situation of
parties and purpose they had in view in order to arrive at inten-
tion as expressed in language actually employed.

3.  Easements—Deed of Coal in Center of Large Tract Bordering on
River Carried Right of Way to River.—Deed of coal in center of
large tract bordering on river held to contemplate right of way
from coal to river, where transportation at time deed was exe-
cuted was by river, though deed did not express point or place
to which passway should run.

4.  Easements—Use of Way Held Not to Constitute Selection of
Right of Way for Taking Out Coal.—Where deed of coal in center
of tract bordering on river, on which coal was being transported
at time, contemplated right of way to river, there was no selec-
tion of right of way, such as would estop owner of coal from
selecting another, by use for short while of a passway to nearest
outside boundary, and then over land of another under temporary
permissive license.

5.  Easements—Deed of Coal Lands Giving Right of Way Held to
Permit Use of Tramroad, and also Road for Other Vehicles if
Necessary.—Deed of coal in center of large tract giving right of
way permitted use of tramroad, and also road for vehicles or
other travel if both of them were required for operation of mine.

GOURLEY & GOURLEY, ROBERTS & PENDERGRASS, BEN G.
WILLIAMS and WILEY C. MARSHALL for appellant.

ROSE & STAMPER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to September 4, 1880, Benjamin Botner
owned a tract of land in Lee county containing 224 acres,
at one point of which it touched the south fork of Ken-
tucky river, which was then and continuously since then
a navigable stream at least during certain seasons. There
was no railroad near the tract or other means by which
mineral or other products in that vicinity could reach
the markets. On that day Botner and wife sold to Wil-
liam H. Dickerson the coal under ten acres of the land
situated and located near the center of the 224 acre tract.
There is contained in the deed immediately following the
description this sentence: "Also the right of way to said
coal through my up land." By a series of mense con-
veyances from both the vendor and vendee in that deed
the appellant, Beattyville Company, became the owner of
the surface in that ten acres and also of the rest of the
tract, and the appellee, Tyrone Coal Company, became the

owner of the coal interest therein conveyed, and this suit was brought by appellant and plaintiff, Beattyville Company, against appellee and defendant, Tyrone Coal Company, to recover $600.00 damages to the entire tract on the ground, as alleged in the petition, that the defendant had unlawfully trespassed upon plaintiff's land outside of the described ten acres in exercising privileges and licenses not conferred upon the vendee in the deed referred to, by reason of which plaintiff had sustained the damages sued for.

The answer denied the grounds of recovery and relied on defendant's acquired rights under the deed and under the law in defense of all the acts complained of. A trial before a jury resulted in a verdict for defendant, and plaintiff's motion for a new trial having been overruled it prosecutes this appeal.

Before noticing the errors relied on, a statement of what the testimony tended to show as the facts will be relevant.  Shortly after the deed in 1880, Dickerson, the vendee therein, opened up a mine on the ten acres and operated it to some extent and used in getting to and from the mine what appears to be a temporarily provided passway or roadway running from it almost directly south to the line of the 224 acre tract and then over the lands of a Mr. Smith, the adjoining owner, to Kentucky river from which point shipments were made.  It seems that Dickerson did not operate the mine for a great length of time and it was abandoned until some seven or eight years ago when one Bailey became its owner.  In the meantime the route of ingress and egress used by Dickerson, but which had been abandoned for more than thirty years, had grown up in timber, and Bailey constructed a tramway from the mine to the river all on the 224 acre tract, and in connection therewith used a wagon road for vehicles which ran near to and almost parallel with the tramroad, and both the tramroad and the traveled way were so constructed and being used at the time plaintiff acquired its title.  No timber used in the construction of the tramway, which at first had wooden rails, was procured from defendant's tract of land, but it was hauled from other lands and used in the construction of the tramway.  No cutting of timber on any part of the tract was proven as against the defendant herein or as against any of its immediate vendors, except perhaps what may have been necessary at the beginning in clearing out the

vehicle passway, although there is no evidence, except that furnished by inferences, of even that fact.

With the evidence, in substance, as we have stated it, the court instructed the jury that if it believed from the evidence that plaintiff committed the trespasses complained of "and that the said acts of the defendant were not reasonably necessary and proper for the reasonable and substantial enjoyment of the defendant of its ownership and right in said land (as a means of ingress and egress to and from its mine) and as a result thereof said land of plaintiff was injured and rendered less valuable, the jury should find for the plaintiff," etc. It also gave the counterpart of that instruction to the effect that if defendant did nothing more to defendant's land than what was "reasonably necessary and proper to the reasonable and substantial enjoyment of its ownership and right in said coal, as set out in instruction number one, in a reasonable and substantial manner, and that the same was done without any unnecessary injury to the rights and ownership of the plaintiff, they will find for the defendant," etc.; and that the jury in estimating the damages would not consider any act or acts of defendant "which they believe from the evidence was reasonably necessary or proper to be done in the reasonable and substantial enjoyment of defendant in its ownership and right of said land." Manifestly, the instructions referred to correctly stated the rights of the parties, provided the routes selected by the defendant for its tramroad and wagon road were located along places over which it was authorized to construct them. But, in a prior instruction the court had told the jury that under the terms of the deed defendant was granted "a right of way from said coal to the Kentucky river through the remainder of the tract of land described in the petition," and it is seriously insisted that the court erred in so doing, but we find ourselves unable to agree therewith.

No rule is more fundamental in the law than that a deed or other writing must be construed and interpreted according to the intention of the parties at the time of its execution; and if the language employed is obscure, indefinite or ambiguous it is equally fundamental that courts may look to the situation of the parties and the purpose they had in view in executing the instrument in order to arrive at their intention as expressed in the language they actually employed. Beyond all dispute the parties here contemplated that the purchaser of the coal

would engage in mining operations for the purpose of extracting it; and equally so that he would need and must have a right of way to the coal in order to extract it, and that he should also have a means of getting the extracted coal to a place where it could be marketed. Otherwise the whole object of the purchase as well as the mining operations following it would be futile and purposeless. As we have seen, the only means of shipment at that time (and indeed up to the present time so far as the record shows) was by water transportation on the Kentucky river, to which stream, as we have seen, the vendor's (now plaintiff's) land extended, and it is evident to our minds that the parties not only contemplated that the purchaser of the coal, when mined by him, should have the right of a passway to convey it to the only point of shipment, the Kentucky river, over defendant's remaining lands but over the upland, which necessarily means so far as the upland ran over it to the river, which in this case is practically to its banks and from which point the coal is run through a shoot into barges but perhaps across a narrow strip of lowland. We, therefore, conclude that, notwithstanding the deed fails to locate the point or place to which the passway may run from the "said coal," it was necessarily understood between the parties that it should run as we have above indicated; for, without such interpretation there would have been no profitable use that could be made of the purchased coal. An additional fact fortifying that conclusion is that all the coal being mined in that vicinity at that time was transported from the mines to the Kentucky river and shipped to the markets in boats navigating it. We, therefore, conclude that the objection now under consideration is without merit.

It is next insisted that the court erred in not giving to the jury instruction "A," offered by the plaintiff, to the effect that if the parties agreed on a right of way and that it was "selected by the former owners of the coal property and that they used same, the defendants are estopped to claim any other right of way over said lands;" and the cases of Godman v. Jones, 180 Ky. 217; L. & E. R. R. Co. v. Hargis, *idem* 636, and others referred to in those opinions, are relied on to sustain that contention. But we do not interpret the facts of this case as bringing it within the doctrine of the ones relied on. Of course, the basis for the contention is that Dickerson, when he first opened the mine, used for the short while he operated it as a means of ingress and egress, not only

for the transportation of coal but for other travel, the route which we have hereinbefore described. But that was not the character of passway contemplated by the parties at the time of the execution of the deed, nor the one conveyed by the terms thereof as we have interpreted them. That passway, as we have seen, has long since been abandoned, but when in use it did not extend to the point of shipment (the Kentucky river) over the remaining portion of the entire tract, but only went over vendor's land to the nearest outside boundary of that tract on the south, and from thence over another's land, the use of which, according to the testimony, was only a temporary permissive license which has long since been surrendered, and it is manifestly incorrect to hold that the brief use of the passway over plaintiff's land to its southern boundary, and from thence over the lands of others to the river, was a final location of the passway contemplated by the parties and conveyed in the deed. Not only was the passway, as so contemplated and conveyed, one to run over plaintiff's land, but also, as we have said, it was to run from the mine over vendor's land to the only shipping point in that vicinity which defendant or the owner of the mine could utilize, the Kentucky river.

It is furthermore intimated that defendant obtained no right, either under the terms of the deed or by operation of law (its purchased coal being surrounded by land of the vendor thereof), to but one passway, and that it cannot be permitted to use a tramroad and also a road for vehicles or other travel; but we are also of the opinion that there is no foundation for that claim. Necessarily, in the operation of a coal mine, the operator has the right to use modern methods of transporting his coal therefrom, and it is a universally known fact that such transportation by means of tramroad is far superior in all respects to transportation by vehicles carrying small quantities of coal and requiring much more labor and expense. Furthermore, the owner cannot operate his mine without some means of going to it and getting away from it over some kind of passway suitable for vehicles and other means of travel which he must use in getting his hands and necessary material to and from the mine; and it is our conclusion that when the deed speaks of a passway it contemplates the usual and ordinary means of transporting, not only the coal that may be mined, but also workmen and material necessary for that purpose;

and if two roads are required for such operation, one for the coal and the other for the laborers and material, as appears to be true, the grantee had the right to their use, and the court correctly rejected this argument.

Wherefore, the judgment is affirmed.