## Godman, et al. v. Jones.

(Decided April 19, 1918.)

### Appeal from Harrison Circuit Court.

1. Easements—Establishment of Passway—Evidence.— Passways being like all servitudes, limitations of, or deductions from, another person's ownership and dominion over his land, should be clearly established by the proof before the landowner should be thus deprived of his property.

2 Easements—Right of Passway by Prescription.—A right to a passway by prescription is founded upon the presumption of a grant which can only arise from the adverse, uninterrupted, and continuous use of the passway, by the ·person asserting the right, or by his predecessor in title, for a period of 15 years; but the presumption of the grant from a mere user, though con-

tinued for a period longer than 15 years, will not avail the claimant if the use was permissive only.

3. Easements—Passway—Permissive Use.—Whenever the use of a passway is interrupted or controlled by the owner of the servient estate, as a matter of right, such interruption and control is evidence that the use was permissive only.

4. Easements—Implication in Favor of Passway.—Where a tract of land is conveyed which is separated from the highway by other lands of the grantor, or which is surrounded by his lands or by his lands and those of third persons, there arises by implication in favor of the grantee a way of necessity across the premises of the grantor to the highway.

5. Easements—Implication of Grant.—Necessity does not of itself create a right of way; but it is evidence of the grantor's intention to convey one, and raises an implication of a grant.

6. Easements—Passway.—If one has an outlet over his own land, although less convenient, he cannot claim a passway over the premises of another; or, if there already exists a road accessible to him though very inconvenient or in very bad condition, a way of necessity cannot ordinarily be implied.

7. Easements—Implied Grant of.—On the conveyance of one of several parcels of land belonging to the same owner, or upon a partition of land in a judicial proceeding between the heirs of a, deceased owner, there is an implied grant or reservation of all apparent and continuous easements or incidents of property which have been created or used by the owner during the unity of possession, though they could then have no legal existence apart from his general ownership.

8. Easements—Passway—Partition of Land.—The passway in use at the time a partition between the heirs was made is the passway the parties will be deemed to have agreed upon; their successors in title cannot claim a different outlet or passway upon the ground that it would be more convenient.

W. L. CASON and CASON & COX for appellants.

M. C. SWINFORD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is a controversy over a passway which the appellee Jones claims over the land of the appellant Birdella Godman.

Upon the death of Benjamin Robinson in 1875, a tract of 260 acres was set aside as dower to his widow. Benjamin Robinson left four daughters, Mrs. John Burgess, Mrs. Elizabeth Dowd, Mrs. Phoebe Kendall, and Mrs. Birdella Godman. Mrs. Dowd died in 1878, and Mrs. Burgess died about the same time. Upon the widow's

death in 1879 or 1880 the dower tract was partitioned between Mrs. Kendall, Mrs. Godman and the heirs of Mrs. Dowd and the heirs of Mrs. Burgess, as shown by the accompanying plat:

The Burgess heirs took lot No. 1 containing 60 acres; Mrs. Kendall took lot No. 2 containing 64 acres; the Dowd heirs got lot No. 3 containing 67¼ acres; and Mrs. Godman got lot No. 4 containing 67.16 acres.

The dower tract was bounded on the north by the Stringtown and Colemansville road, now a turnpike. On the south of the dower tract was the north fork of Raven

creek along which there was a passway going through the land of· various persons and to the Cynthiana and Leesburg road, now a turnpike.

The Dowd heirs, who took lot No. 3 through their mother, consisted of Alvin, Anson, and Ben Dowd, who subdivided tract No. 3 between themselves. Prior to the division, however, Alvin had sold his interest to Mrs. Godman, and his share was accordingly laid off so as to adjoin lot No. 4 which belonged to Mrs. Godman. On December 15, 1880, Alvin Dowd conveyed his tract of 22 acres to Mrs. Godman, describing it by metes and bounds. Anson Dowd took the middle tract containing 22 acres and Ben Dowd took the western tract consisting of 23 acres.

On February 5, 1884, Anson Dowd sold and conveyed his tract to Mrs. Godman. This deed is in the usual form and contains no reservation or exception.

Ben Dowd continued to hold his 23 acres until July 11, 1890, when he conveyed it to John W. and Thomas ·Winkle. This deed to the Winkles contained, immediately after the description of the land, the following clause: "Also a road from said lot to the Colemansville and Stringtown dirt road to be twelve feet wide through the land of Birdella Godman." This clause was repeated in all subsequent conveyances of the Ben Dowd tract. It will be observed that this passway from the Ben Dowd tract over Birdella Godman's land to the Stringtown road was first mentioned in the deed from Ben Dowd to the Winkles; that it is not specifically located; and did not appear in the deed from Anson Dowd to Mrs. Godman, although the passway was over the land which Anson had sold to Mrs. Godman six years before.

John W. and Thomas Winkle conveyed the Ben Dowd tract to Ephriam Winkle on Sept. 22, 1892, and Ephriam in turn reconveyed the land to John W. Winkle in 1894. John W. Winkle finally parted with the land by selling it to Sol Winkle in April, 1899, although the deed carrying the sale into effect was not executed until 1906. Sol Winkle moved onto the land in the fall of 1901 and held it until March 13, 1914, when he conveyed it to the appellee W. A. Jones. On April 6th, 1914, Jones brought this action against Mrs. Godman and her daughter Addie Godman for an injunction compelling them to open said passway; and the court having granted the prayer

of the petition, the defendants Mrs. Godman and her daughter appeal.

Ben Dowd never resided upon the 23 acre tract; and indeed it had no dwelling house upon it at any time prior to the one built thereon in 1901 by Sol Winkle after he bought it.

Previous to his death Benj. Robinson had given to his daughter Mrs. Burgess a tract of land on the Leesburg road and adjoining lot No. 1 as shown by the map; and, he had likewise given a tract of land to his daughter Mrs. Dowd which also lay upon the Leesburg road and to the west of the Burgess tract. Upon the death of Mrs. Dowd in 1878 this land upon the Leesburg road had been divided between her children, and Ben Dowd continued to live upon the land thus acquired on the Leesburg road while he owned the 23 acres which he subsequently acquired out of the dower tract.

Mrs. Godman contends that lot No. 3 was subdivided between the Dowd heirs at the same time in 1880 that the dower tract was divided between the Robinson heirs; while Jones contends that the division of the dower tract between the Robinson heirs was made in July, 1880, and that the subdivision of the Dowd 67 acre tract was made in the fall of that year. We do not, however, attach much importance to either of these contentions, since the facts relating to the existence of the passway would be given the same effect under either contention. But it is certain that when lot No. 3 was subdivided between the Dowd heirs, whether by the commissioners who divided the entire dower tract or by others agreed upon for the purpose of subdividing the Dowd tract, no provision was made for a passway from Ben Dowd's 23 acres to the Stringtown dirt road, either over the Anson Dowd tract as now claimed by Jones, or over any other tract.

As above indicated the passway now claimed runs over the Anson Dowd tract; but Anson Dowd's deed of Feb. 5, 1884, to Mrs. Godman made no mention of a right of way. As heretofore stated, the first reference to the passway now asserted is contained in the deed of Ben Dowd to the Winkles dated July 11, 1890, about six and one-half years after Mrs. Godman had bought it. During all these years, and until his death in Feb., 1903, John Godman and his wife lived either on his wife's land on the Leesburg road or at Stringtown; they never lived

upon the land which Mrs. Godman acquired from the dower tract.

At the time of this division in 1880 and for many years previous thereto there was a road extending up and down the creek in front of the Benj. Robinson house (B. R.), and connecting with and crossing the Leesburg road. Likewise there had existed for many years a road or passway represented by the dotted line on the plat leading from this creek road at the point A near the Benj. Robinson house, and extending up the branch through Benj. Robinson's land to point B on the dotted line, where it forked, the east fork of the road extending up the hill and out to the Stringtown road near the point G. The other, or west fork, continued up the branch as indicated by the letters B, C, D, to the foot of what is known as the Beagle point, on which stood the Beagle house.

There is some controversy as to whether this road extended through the Ben Dowd 23 acres; the appellee contending that it did not pass through that tract but passed east of it over the Anson Dowd tract, and therefore did not afford an outlet from the Ben Dowd tract to the Leesburg road. The weight of the evidence, however, shows that the road did pass through the Ben Dowd tract as indicated on the plat, and that the imprints of these roads were still distinctly visible at the time of the division in 1880, and for many years afterwards. It further appears that the east branch of this passway was used not only by Ben Dowd and his family but by the public generally whenever it wished to pass between points on the Raven creek road and points on the Stringtown road. The west prong of the road which extended up the branch to the Beagle house was generally used by Robinson and his family in going to and from that part of the farm into which it extended, and was known as a "plantation" or farm road.

This was the condition when John Godman, the husband of Mrs. Birdella Godman, undertook to control and stop the travel over the farm. He found this, however, to be quite difficult from the fact that he did not live upon the land, and during his absence people would travel across it at pleasure. Ben Dowd lived upon the Leesburg road and had no occasion to use a passway over the Anson Dowd tract in order to reach his 23 acre tract.

The proof clearly shows that he always went down the Leesburg road and passed thence up the creek road (A, B, C) in going to that tract. As before stated Sol Winkle built the first house on the Ben Dowd tract, and moved into it in the fall of 1901.

Jones claims the passway in question (1) by prescription, and (2) by reason of the necessity of the case, or by implication of law. It is not a question whether this or any other passway is or was convenient or necessary to Jones or his vendors at any time after the division, but whether Jones owns this passway and has the right to use it. This eliminates from consideration the question of convenience or present necessity which may arise in connection with the use of this or any other passway to or from the Ben Dowd tract and likewise makes incompetent and irrelevant all the proof and discussion as to the location of school houses, churches, stores, post offices, blacksmith shops, railroad stations, and other places in the immediate neighborhood which would be more accessible and convenient if this passway existed.

If appellee is entitled to this passway it exists independently of these considerations; and the fact that the asserted passway would enable Jones to approach his land from the Stringtown road (now a turnpike) instead of following the old road by way of the Leesburg pike, does not strengthen his case. Passways being like all servitudes, limitations of, or deductions from, another person's ownership and dominion over his land, should be clearly established by the proof before the landowner should thus be deprived of his property. The burden in all such cases is upon the person claiming the easement.

1. Taking up first the question of appellee's right to this passway by prescription we will briefly consider the proof with relation to the character of the use of the passway and the extent of that use by Jones and those under whom he claims and holds, bearing in mind that the claim to the passway by prescription cannot antedate December, 1880, when the Dowd tract was subdivided. Since that date the owners of the Ben Dowd tract have been as follows: Ben Dowd from 1880 to July 11, 1890; John and Thomas Winkle from July, 1890, to September 22, 1892; Ephriam Winkle from that date to 1894; John W. Winkle from 1894 to April, 1899; Sol Winkle from

April 1, 1899, to March, 1914; and Jones, the appellee, from March, 1914, to the present time.

In view of the fact that the depositions in this case cover nearly five hundred typewritten pages it becomes an impracticable thing to review all the proof in detail, within a reasonable compass. We will content ourselves with reviewing the testimony of some of the principal witnesses, and stating the effect of the testimony as a whole.

Jones, the appellee, testified that he had known the passway to be traveled for 23 years and had traveled it himself before he bought it; but when asked who had used it he failed to show that any one of his grantors was ever seen on this road or any part of it except Sol Winkle who bought it in 1899. He further testified that he had seen it used by Elliott, Godman, and Dunn; but none of these were his grantors, and Godman's wife owned the land.

Ramey, who owned the adjoining tract and lived on it for many years, testified that the first person he knew to travel this passway was John Godman about 25 years ago; that he knew of the Winkles traveling that way 12 or 13 years ago, and that he knew of no one else using the passway except Godman and the Winkles.

Elliott testified that about 26 years ago he hauled several loads of cane up the passway; that he afterwards traveled it going to Winkle's; and that at the time he hauled the cane it was not a wagon road and ''that he had to knock out a little road right past the Sol Winkle house.'' Elliott further testified that he saw Ben Dowd using this passway one time only, and ''thought he turned down that way.''

Fredrick, who was never on the passway himself until four or five years ago, saw Ben Dowd come out of the passway in a buggy 25 years ago. Albert Dunn, who knew this land 25 years ago, never knew Ben Dowd to use the passway; and while he had seen John Godman and his daughter travel it he had not seen many persons use it until after Sol Winkle owned it. He further says that when Elliott used the road he was cultivating land for Mrs. Godman.

Anson Dowd who owned the land over which the passway is claimed testified that Ben Dowd never used it; that Ben had no house on his 23 acre tract; that he lived on the Leesburg road; that in going from his home to his

23 acre tract Ben always went down the Leesburg road and thence up the old road through the Burgess tract and along the creek; that the road up and down the creek near the Benj. Robinson homestead was a county road; and that there was no established passway, such as is now claimed, when Anson Dowd left Kentucky in 1902. It is true Anson Dowd testified to a verbal agreement between the Dowd brothers to the effect that Ben was to have a 12 foot passway running from his 23 acre tract to the Stringtown road and next to Ramey's line; but Mrs. Godman denies any knowledge of the agreement, and it if existed as claimed it cannot aid the claim by prescription.

Brooks testified that he had known the Ben Dowd land for many years and never saw any of appellee's grantors use the passway except Sol Winkle; and that was after Sol had bought the land, and was less than 15 years before this action was instituted. James Mulligan, Sol Winkle's son-in-law, testified that he saw John Winkle go in and out of the passway, and that he had himself used it, first when he hauled logs to build the house in September, 15 years before giving his deposition. It could not have been before September, 1899, since no one claimed that Sol Winkle bought the land before April 1st, of that year.

Charles Eckler, a step-son of Sol Winkle, says he saw Sol use the passway prior to the time Sol moved there, and that he had since used it; but to avail appellee anything it must have been during the period of Sol Winkle's ownership, as above indicated.

So, of all the grantors of appellee, up to the time Sol Winkle moved in, Ben Dowd was seen using the passway twice; John Winkle was seen to use it in hauling a few loads of stove wood; Thomas and Ephriam Winkle never used it at all; and no one lived on the land.

In this connection the testimony of Lavinia Winkle, a daughter of Sol Winkle, is important. It will be remembered that Sol Winkle began living upon the Ben Dowd tract in September or October 1901, and continued to so reside until he sold the land to Jones in 1914.

Lavinia testified that during that period her father and different members of his family looked after Mr. Godman's stock on the place, and kept up the fences in order to keep the stock from leaving the place. Lavinia would not say that her father ever claimed any right

to the passway in question; on the contrary she says that Miss Addie Godman, the daughter, threatened to stop the use of the passway unless the fences were kept up so as to keep the stock from wandering, and that the members of Sol Winkle's family complied with her demands. She reported the threat of Miss Godman to Jones about a week before be bought the place in 1914, and Jones replied that he had as much money to get the road as she had. And, Lavinia admits that Addie Godman did tell her at different times that her father Sol Winkle had no passway through the Godman land.

Furthermore Addie Godman required Sol Winkle to repair the road according to her directions, and John Godman repeatedly complained of people tearing down his fences, and threatened to stop them from using the passway unless they complied with his demands. And, so far as this record shows, no one contested John Godman's claim that the use of that and other passways over his land was permissive only, until after his death.

In addition to this, appellee's proof shows travel over this passway by others than those under whom he claims; and while several of the witnesses indulge in the broad assertion that "everybody traveled it," when we come to scrutinize the circumstances under which these strangers to the title used the passway, we find little that can aid the appellee's claim.

It is sufficient to say that from 1880 to the present time, perhaps less than a dozen persons, in addition to the Godman family and the persons in line of appellee's title, have been seen using this passway; and, their use of it was not of such a character as to justify us in drawing any conclusions that would sustain the appellee's claim.

Stress is laid upon the testimony of Mrs. Anne Winkle, the widow of John W. Winkle, who said that John Godman met her while using the passway and told her that it was their passway to the land. But from a careful reading of her testimony it is exceedingly doubtful if she was using the passway in question at the time of her conversation with John Godman, since she speaks of passing through a gate leading from the Stringtown road into the Godman land, and then going thence down a fence line near some buildings. But there never was a gate at the point where the disputed passway opens into the Stringtown road until appellee Jones placed a gate

there in 1914; and, there were no buildings which she could have passed until after Sol Winkle built his house, long after the alleged conversation. There was a gate, however, at the point where the division line between the Anson and Alvin Dowd tracts touched the Stringtown road; there was a fence along that dividing line in front of the Beagle house; and, there was a road crossing from the old Beagle house to the 23 acres. It is therefore more than probable that Mrs. Winkle was traveling that passway at the time she had the conversation with John Godman.

And, Mrs. Oder, a neighbor for many years, testified with precision that Sol Winkle generally used the road running near the Beagle house; that both Sol Winkle and his wife said "they had no outway"; and that they looked after Mr. Godman's stock, evidently for the permission he gave them of using the passway. Appellee, however, expressly restricts his claim to a passway adjoining the Ramey tract.

The remaining testimony is along the line of the proof above outlined and adds nothing to it. These extracts from the proof fairly illustrate the character of the testimony as a whole. It would prolong this opinion to an unreasonable length to further examine in detail the testimony of the several witnesses. The effect of the proof is that this passway was used by John Godman for his own use and convenience in his farming operations after his wife bought the Anson Dowd tract in 1884, and was so used by him until his death in 1903, and by the members of the family and tenants afterwards; that there was very little travel upon it except by John Godman and his family and tenants until after Sol Winkle moved there in the fall of 1901; that John Godman up to his death in 1903, and Addie Godman and her mother since, and at all times, have insisted that the passway was not to be used without their permission, and that their right to do so was recognized by everybody except Jones.

It is not an uncommon thing for persons who have enjoyed the permissive use of an easement for a long period to indulge the hope which eventually ripens into a belief, that the use has been hostile and under a claim of right. This is so especially true where the owner of the servient estate is lenient in his requirements, that it may be said the greater the accommodation the greater the danger. Such is the case here. Mrs. Godman did not

live upon her land and the neighbors took advantage of that fact by traveling over it to suit their convenience. But they were always trespassers; they never did so under any right. The passway is now claimed by prescription; but in order for such a right to exist the use must have been exercised under a claim of right and continuously for a period of fifteen years. In our opinion neither fact exists.

The use of the passway prior to September 1901 when Sol Winkle moved to the Ben Dowd tract may be said to have been negligible; it certainly was not hostile to Mrs. Godman. Mrs. Godman testified that shortly after Ben Dowd sold his land to Winkle, Ben Dowd and Winkle called upon her for the purpose of buying a roadway for an outlet, Winkle saying that Dowd had conveyed him a road over her land, when he had no such roadway, and that she declined to either sell or give a passway over her land. And, when she asked Ben Dowd why he had assumed the right of granting a passway over her land, he answered that "he had to do something."

A right to a passway by prescription is founded upon the presumption of a grant which can only arise from the adverse, uninterrupted and continuous use of the passway, by the person asserting the right, or by his predecessors in title, for the statutory period of limitation. Swango v. Greene, 155 Ky. 227. But the presumption of a grant from mere user, though continued for a period longer than fifteen years, does not avail if the use has been permissive only.

The use of the passway by Sil Winkle, as above shown, was permissive only; but if hostile, it at most extended only from September 1901 to 1914, a period of less than fifteen years. And certainly it was not continuous; on the contrary it was constantly interrupted and controlled by John Godman and by Addie Godman after her father's death. Whenever the use is interrupted or controlled by the landowner, as a matter of right, such interruption and control is evidence that the use was permissive only. Cahill v. Mangold, 151 Ky. 156. We conclude therefore that the claim by prescription is not sustained by the proof. Smith v. Pennington, 122 Ky. 355; Schwer v. Martin, 29 Ky. L. R. 1221, 97 S. W. 12; Downing v. Benedict, 147 Ky. 8.

2. The amended petition claims that the passway in controversy originated from an implied reservation in

the partition based upon necessity, and regardless of any agreement between the Dowd heirs. The rule concerning ways of necessity is stated as follows in 9 R. C. L. 768:

"It is a universally established rule that where a tract of land is conveyed which is separated from the highway by other lands of the grantor, or which is surrounded by his lands or by his and those of third persons, there arises by implication in favor of the grantee a way of necessity across the premises of the grantor to the highway. The basis of this right is the presumption of a grant arising from the circumstances of the case. Necessity does not of itself create a right of way, but it is evidence of the grantor's intention to convey one, and raises an implication of a grant. The presumption, however, is one of fact, and whether or not the grant is to be implied in a given case depends upon the terms of the deed and the facts in that case. . . If one has an outlet over his own land, although less convenient, he cannot claim a right over the premises of another; or if there already exists a road accessible to him, though perhaps very inconvenient or in a very bad condition, a way by necessity cannot ordinarily be implied." See also Brown v. Burkenmeyer, 9 Dana 159.

But no such easement could have existed so long as the dower tract was owned by one person, during which time the owner might, at pleasure, have rearranged the several parts of his farm and discontinued the use of the passways. When, however, there was a severance of the ownership by the partition, the right of the owner to redistribute the properties of the respective portions ceased, and easements or servitudes were created corresponding to the benefits and burdens mutually existing at the time of the partition. Muir v. Cox, 110 Ky. 564. A subsequent change in conditions would not authorize a change in the existing passways.

Consequently, if Ben Dowd acquired an outlet from his 23 acre tract at the time of the subdivision in 1880, his successors in title cannot now claim a different outlet or passway upon the ground that it would be more convenient. The law will not thus burden the land of a neighbor; it will not say that the landowner may transfer the burden of a passway from one neighbor to another. The way in use at the time the partition was made is the one the parties will be deemed to have agreed upon. Bent-

ley v. Hampton, 28 Ky. L. R. 1083, 91 S. W. 266; Ring-gold Lodge v. DeKalb Lodge, 157 Ky. 203.

Furthermore, it is well settled that on the conveyance of one of several parcels of land belonging to the same owner, or upon a partition of land in a judicial proceeding between the heirs of a deceased owner, there is an implied grant or reservation of all apparent and continuous easements or incidents of property which have been created or used by the owner during the unity of possession, though they could then have no legal existence apart from his general ownership. Washburn on Easements, p. 81; Lebus v. Boston, 107 Ky. 103; Muir v. Cox, 110 Ky. 563; Ringgold Lodge v. DeKalb Lodge, 157 Ky. 203; Gentry v. Piercy, 175 Ky. 175. It follows, therefore, that all passways that existed upon the dower tract in 1880 continued to exist after the partition, for the use and benefit of the respective allotments, and that the same rule applies to the subdivision of lot No. 3 between the Dowd heirs.

So, if Ben Dowd had an outlet to his 23 acres at the time of the subdivision in 1880, he cannot now claim a different outlet or passway of necessity; and that he did have such an outlet we think there can be no doubt.

The proof is entirely satisfactory that during the lifetime of Benj. Robinson there existed a well defined road running from point A on Raven creek northwardly to the point B where the road forked, the left fork passing along the line B, C, D through Ben Dowd's 23 acres to the Beagle house; the east fork passing along the line B, E, F, G to the Stringtown road. The proof is convincing, and apparently without contradiction, that Ben Dowd always used this road in traveling between his residence on the Leesburg road and his 23 acre tract; and that being true his successor in title cannot say that the passway which Ben Dowd used for ten years was not sufficient or convenient, or that he will select a different passway and thereby impose a new burden upon the land of Mrs. Godman.

It is an interesting fact that although nearly 34 years have elapsed between the division of this land in 1880 and the purchase of the Ben Dowd tract by the appellee Jones in 1914, no one of the several owners of that tract ever considered his claim to this passway sufficiently strong to enforce it; on the contrary they permitted the Godmans to control its use. It is also significant that

the deed from Ben Dowd to Winkle which first asserted a passway over Mrs. Godman's land does not locate the passway next to the Ramey tract as is now claimed, or at any particular place; it merely attempts to convey a road from the Ben Dowd 23 acre tract to the Stringtown road "to be twelve feet wide through the lands of Birdella Godman."

We think the conclusion that Ben Dowd had an ample outlet from his tract by way of the old road leading southwardly to Raven creek is unavoidable, and that the appellee's claim to an outlet leading northwardly to the Stringtown dirt road, which has now been converted into a pike, is merely a belated assertion to a passway that will be more convenient to him. But, as we have seen, this does not justify him in claiming a new passway of necessity.

As Jones has not shown any right to the disputed passway either by prescription or from necessity, the judgment of the circuit court is reversed with instructions to dismiss the petition.