Plaintiff seeks to foreclose three paving liens against Lots 1, 14 and 16, respectively, of the Selber Subdivision, owned by defendant, in the City of Shreveport, Louisiana. The liens allegedly resulted from assessments against the lots of two-thirds of the cost of laying concrete pavement on a strip of land forming part of Southern Avenue between Lot 16 on the east and Lots 1 and 14 on the west. There were three different suits to enforce the liens. They were consolidated for trial in the lower court and have been consolidated here.
In limine, defendant filed in each case an exception of vagueness and motion for bill of particulars in which he sought to have plaintiff provide facts and information, not disclosed in the petitions, inter alia, as to when and how the strip of land between defendant's lots was dedicated as a street, and the manner of plaintiff's acquisition of it or right-of-way thereover. The exception and motion were sustained in part, but were overruled as to the facts about the dedication. The District Judge who passed on the exception and motion did not preside at the trial on the merits.
Defendant's counsel, in brief, states that the judge reached the conclusion that, as the land after its acquisition by the City, became public property, no dedication of any part of it for street purposes, express or implied, was necessary.
[1] During trial plaintiff offered evidence to show that the land was acquired for street purposes and to establish a dedication impliedly. Defendant objected to the admissibility of this evidence on the ground that the petitions did not contain any allegation of dedication. The objection was overruled and the proffered evidence admitted. This evidence, the trial judge expressly held, did establish an implied dedication. It follows from the court's ruling that it was of the opinion that a dedication of the land was necessary to the validity of the assessments against defendant's property. We concur in this conclusion.
In this court, defendant insists that said rulings were erroneous and prejudicial to his rights, and that the case should be remanded for further proceedings. He does not specifically state, however, to what extent or in what respect the rulings impair his rights or prejudice his interest.
If defendant's position should be sustained, we would have to remand the case to allow plaintiff to amend and defendant to further answer, if he desired to do so, and a new trial would be had. To warrant this action, we would necessarily have to hold that the rulings worked prejudice to defendant's rights; that he had been deprived of his day in court, and that he had exhausted all means at his command to protect his rights in the lower court. It is unlikely that any additional evidence would or could be adduced touching the question of dedication. Defendant does not contend to the contrary.
[2] We do not think the rulings complained of, if erroneous, were prejudicial to or deprived defendant of any substantial right. He did not plead surprise nor ask for a continuance of the trial when the objected to evidence was tendered. Had he pleaded surprise and moved for a continuance on that ground, doubtless the trial judge would have granted him delay. He does not now claim to have been surprised by the evidence in question.
Mr. McMahon, Professor of Civil Law at the Louisiana State University, commenting on the exception of vagueness, pages 328, 329 of his work on Louisiana Practice, says: "Effect of judgment overruling exception is to force defendant to answer. Theoretically, defendant should be permitted to complain of the vagueness of plaintiff's allegations on appeal, provided that proper reservation of rights under the overruled exception has been made. However, no case was found where the judgment of a trial court overruling this exception *Page 740 
was reversed on appeal and the case remanded. In at least one case the Supreme Court has avoided the necessity of passing on the question by holding that defendant failed to bring up the question for review on appeal by failing to reserve his rights under the exception when overruled, and by failing to plead surprise when evidence was adduced. Lykiardopoulo v. New Orleans C. R. Light Power Co., 127 La. 309, 53 So. 575, Ann.Cas.1912A, 976, 1910. It is submitted that the proper rule should be that if defendant is not surprised by the evidence adduced, and has failed to ask for a continuance because of such surprise, the error (if one be committed) is not prejudicial and therefore the court should not remand the case for a new trial. * * *"
Anent this question, the article of Dr. Paul M. Hebert, 6 Tulane Law Review, pages 169, 177 and 178, entitled "Problem of Reversible Error in Louisiana" is interesting and enlightening.
The suits were resisted by defendant on two grounds, viz.:
(1) That at time of and prior to paving Southern Avenue between the lots, no part of the strip of land had been in any manner dedicated as a street; and that since the paving was laid, none of the unused portions of the land between said lots has been dedicated; and
(2) That the lots do not abut the improved or paved portion of the avenue. For these reasons, it is contended, the assessments are illegal.
Defendant reconvened and sued for the value of a triangular shaped part of Lot 16 appropriated by plaintiff and paved, and for depreciation in value of the remaining part of the lot due to the appropriation.
The paving involved herein was done under the provisions of Act No. 10 of 1896, as amended. The legality of the proceedings had by the City Council precedent to and culminating in the assessments attacked, save as is involved in the enumerated defenses, is not questioned.
Plaintiff was awarded judgment in each case as prayed for by it. Defendant was given judgment for Fifty ($50.00) Dollars on his reconventional demand. He appealed and complains of the judgments in all respects.
The facts of the cases, record and otherwise, are well stated by the trial judge in written reasons for judgment. We quote therefrom as follows, to-wit:
"The paving project out of which these assessments arose is the paving project out of which arose the assessments involved in Ford et al. v. City of Shreveport, 204 La. 618,16 So.2d 127. As stated in the Supreme Court's opinion in that case, the City of Shreveport, in March of 1941, inaugurated proceedings to pave Southern Avenue from St. Vincent's Avenue to 59th Street, a distance of approximately 1.66 miles. * * *
"At the time of the inauguration of this paving project, the City already owned the necessary rights of way, except for the strip involved in the case at bar and the strip involved in the Ford et al. case, supra. It was, therefore, necessary, in order to complete the paving project as contemplated and authorized, to acquire these two strips.
"Shreveport Railways Company was interested in the project in that it had for years operated its street cars on steel rails along the route of Southern Avenue, including the 1.66 miles proposed to be paved, and it contemplated converting to trackless trolleys which, after the paving was completed, it did, and it is now operating its trackless trolley system over the whole of Southern Avenue and the public is using the same as a street.
"The Shreveport Railways Company owned a 60-foot-wide strip of ground, in fee, running through Selber Subdivision, on the West side of which strip lay Lots 1 and 14 and on the East side of which lay Lot 16. This 60-foot-wide strip was a missing link in the route of Southern Avenue as authorized to be paved, just as the 60-foot-wide strip involved in the Ford case was the only other missing link in said project.
"Accordingly, after the paving was authorized by Ordinance No. 23 of May 27, 1941, the City proceeded to acquire these missing links. In the case at bar the City, on June 10, 1941, secured a deed from Shreveport Railways Company conveying the fee title to the 60-foot-wide strip owned by said Company and running through Selber Subdivision. This deed recites a cash consideration of $350.00. Mr. J.H. Jackson, City Attorney, testified that, although the City paid that amount to the Company, the Company later reimbursed the City *Page 741 
in that amount so that actually the City paid nothing. Similarly, in the Ford case the 64-foot-wide strip was acquired on June 12, 1941, from Mrs. Octavia Hunter, but Shreveport Railways Company provided the $2,000 paid therefor. * * *"
Plaintiff did not formally dedicate to street purposes any part of the parcel of land acquired by it from the Shreveport Railways Company. It is obvious, however, that in consummating the transfer of the land to the City it and its vendor were motivated by the same desire, which was that the City should own the land in order to complete the paving program on the avenue and thereby make available to the public and the Shreveport Railways Company a splendid artery of travel. The City had no other need for the land than to constitute it a part of the avenue and to lay paving thereupon. The land, therefore, took on the character of public property and its use became common to all persons. R.C.C. 453, 454-458. In keeping with the purpose for which the land was acquired, pavement 37 feet wide has been laid its entire length north and south, and the public, since that was done, has used and is now using the avenue its entire length. That part of the land not actually covered by the pavement is not improved. The pavement was laid without objection or protest from defendant or anyone else.
[3] That there was an implied dedication of the whole of the strip of land for street purposes is beyond question. Such a dedication is well recognized in this state. It is, however, of common-law origin. Ford et al. v. City of Shreveport,204 La. 618, 16 So.2d 127. Concerning the dedication, the trial judge said: "The laying of the pavement on 37 feet is not the only circumstance to be considered in ascertaining the intent to dedicate or the extent of the dedication. The evidence abundantly establishes, and it is likewise a matter of common knowledge, that the actual pavement seldom ever occupies the entire width of a street. The history of this improvement, the location of the strip in question in relation to the street paving project, and the circumstances surrounding its acquisition, etc. are all relevant facts to be considered. When so considered, it is our opinion that the facts here clearly establish an implied dedication of the entire 60-foot-wide strip as a public street and a part of Southern Avenue. Both by intent and destination the City and its vendee (vendor) have irrevocably so dedicated it. * * *"
[4] The Ford case, supra, specifically holds that regardless of the ownership of land within the limits of a street on which pavement is lawfully laid by a municipality, without protest from the owner, an implied dedication results therefrom and the acceptance thereof by its use by the public, and assessments against the abutting property for costs of the improvement are proper and legal. A fortiori should this be true when the land embraced between the lines of the street is owned by the municipality and, as in this case, was acquired solely for street purposes.
Act No. 10 of 1896, after prescribing the procedure to be followed as a condition precedent to paving or otherwise improving streets and alleys of a municipality, says: "* * * and after the contract has been awarded the council shall provide by ordinance for an assessment for all real estate abutting the street or alley * * *".
Defendant earnestly contends that as there are intervening areas of the sixty-foot strip owned by the City between the lots and the slab of paving, the lots do not abut the street as required by the quoted part of the Act, an indispensable condition to the validity of an assessment for any part of the cost of paving.
These unused and unimproved portions of the sixty-foot strip are owned by the City in its governmental capacity and may not be made subject to private ownership. The areas which adjoin Lots 1 and 14 are wide enough to accommodate a sidewalk of customary width and also to provide an intervening neutral ground. The time will likely come when the City's development southward will warrant the laying of sidewalks on these presently unused areas.
It is here pertinent to determine, within the intendment of the Act under which the paving was done, what is a street? What does it embrace? Defendant refers us to the definition of a street stated in the decision of the Supreme Court in State ex rel. City of New Orleans v. New Orleans, City Lake Railroad Company, 42 La. Ann. 550-555, 7 So. 606, 607, which is as follows: "A street is a space dedicated to public use, for the passage and circulation thereon of ordinary driven vehicles or animals, in cities or towns."
[5] But a close study of the opinion in that case convinces us that this definition *Page 742 
was adopted strictly to fit and apply to the contract therein sought to be enforced. It cannot have general application because it excludes as integral parts of a street, sidewalks and neutral grounds adjacent thereto.
In the case of Morton v. Sullivan, Ky., 96 S.W. 807, the court defined a street as follows, to-wit: "The word 'street,' in an ordinance ordering a street to be improved at the cost of abutting property, means the entire width of the public way, and includes the sidewalk."
And, in the case of Marion Trust Company v. City of Indianapolis et al., 37 Ind. App. 672, 75 N.E. 834, 836, referring to what constitutes a street, the court said: "While the term 'street' in ordinary legal signification includes all parts of the way — the roadway, the gutters, and the sidewalk — yet the term 'sidewalk' has come to be generally used in this country for the purpose of designating a footway for passengers at the side of a street or road. Elliott on Roads and Streets, § 20; Challiss v. Parker, 11 Kan. 384. In that sense the Legislature is presumed to have used it."
[6] These two cases, in our opinion, correctly reflect the meaning of the word "street" when used in statutes such as Act No. 10 of 1896. Many other cases to same effect could be cited. If streets embrace sidewalks, of necessity they embrace the land upon which the sidewalks rest. It is shown, in fact it is common knowledge, that practically all streets have sidewalks and in residential sections there is also generally provided a neutral ground between the sidewalk and the curb of the paving.
[7] When defendant subdivided into lots the land he owned on both sides of the sixty-foot strip discussed, he adopted as the west boundary of Lot 16 the east boundary of the strip and adopted the west boundary of the strip as the east boundary of Lots 1 and 14. Surely, these lots abut the street which now embraces all of the sixty-foot strip. In cases of this character to abut means that there intervenes no other land that may be put to private use.
The center of the paving, for engineering reasons, does not follow the center of the sixty-foot strip. To attain satisfactory alignment the east line of the pavement crossed the south line of Lot 16, 8.06 feet from its southwest corner, and traversed the lot northerly 123.81 feet to where it crosses the lot's west line. Therefore, a triangle from the lot's western side, with an area of 489 square feet was appropriated by the City and incorporated into the street.
It is contended by defendant alternatively that since the triangle of land was appropriated by plaintiff and paved without his consent and without judicial condemnation thereof, the assessment against the lot for the cost of the paving along the 123.81 feet line is illegal. Several cases from common-law jurisdiction, which support this position, are cited.
While, as before stated, implied dedication of property for public use is of common-law origin, yet by recognizing the doctrine in this state all of the technical rules and jurisprudence of other jurisdictions pertinent thereto were not necessarily adopted here.
[8] As we view the situation pertaining to this small triangle of land, when it was appropriated by possession and the laying of pavement thereon, it automatically became a part of the street and a servitude of passage, or casement thereover in favor of the City and the public came into existence as fully as if it had been acquired by contract or expropriation proceedings. The southerly end of the lot, for a distance of 123.81 feet, abuts the pavement; a common imaginary line separates them.
The case of Jacob v. Mayor and Board of Trustees of City of New Iberia, 163 La. 416, 112 So. 30, cited and relied upon by defendant, is not in point for the reason, as said by the court — "a large portion of ground, triangular in shape (owned by the City), was left between the paved roadway and the property of the plaintiff." In view of this large intervening parcel of land, it was held that plaintiff's property did not abut the paved street or roadway. The assessment against plaintiff's property was declared illegal.
[9] The value of the Lot 16 prior to laying the pavement did not exceed $400. The triangle taken therefrom has an area of approximately three per cent (3%) of the original lot. A deep ditch or ravine traverses the lot, north and south. To level the lot's surface so as to accommodate buildings would require filling this ditch or ravine or placing drain tiling or pipe therein. The cost of this would be prohibitive. *Page 743 
Defendant does not seriously complain of the value of the triangle as fixed by the court, but contends that for all practical purposes the lot's value in its entirety has been destroyed. We are unable to agree with this contention. Ninety-seven per cent (97%) of the lot remains to defendant. It adjoins pavement 123.81 feet and is close to it for the balance of its west side. We think its value has not been depreciated appreciably by loss of the triangle. The award to defendant, under the evidence, is adequate.
For the reasons herein assigned, the judgments appealed from are affirmed at defendant's cost.