No. 21504.

STANLEY SALL *v.* THE CITY OF COLORADO SPRINGS, E. S. RICHTER, DIRECTOR OF PARKS AND RECREATION OF THE CITY OF COLORADO SPRINGS, ET AL.
(423 P.2d 11)

Decided December 27, 1966.   Rehearing denied February 14, 1967.

298

Montell L. Dunn, Murray, Baker and Wendelken, for plaintiff in error.

F. T. Henry, for defendants in error.

*En Banc.*

Mr. Justice Schauer delivered the opinion of the Court.

Plaintiff in error was the plaintiff in the lower court and will be so referred to, or by name. Defendants in error will be collectively referred to as the city.

Plaintiff brought action for an injunction restraining and enjoining the city from interfering with access to his property from Grandview Road, located in Palmer Park, which borders his property on the north. The court denied a temporary injunction, and at a subsequent hearing upon the merits dismissed plaintiff's complaint and entered judgment for the city. Plaintiff seeks a reversal of this judgment by writ of error.

The city offered no evidence, and plaintiff's evidence established the following facts:

Plaintiff presently owns property, which will be referred to as the subject property, consisting of the rear portion of Lots 26 and 28, in Block K, in the City of Austin Bluffs, a subdivision of Colorado Springs, the plat of which was duly executed and recorded. The lots, as platted, are 100 feet wide, east and west, and 600 feet in depth, north and south. The plat shows that access to the lots can be gained only at their front from Chelton Road, and that no access road or alley is situated at the rear of the lots at the top of the bluff along which Grandview Road extends. The lots, as platted, extend through very rough terrain, and vehicular travel from south to north is virtually impossible.

Plaintiff originally owned the whole of these lots. The southern portion is separated from the northern

portion by a natural barrier, referred to as a "sheer crevasse," running east and west. Prior to bringing this action plaintiff sold the southern 300 feet, retaining only title to the northern 300 feet, reserving no right-of-way through the tract sold, which permitted access from Chelton Road, to the retained tract.

The subject property slopes to the south, with a drop of 100 feet, as estimated by an engineer, from its north to its south boundary lines. The evidence shows that there is no access from the south for vehicular traffic; that the cost of construction of an access road from the south would be prohibitive, and that, even if possible, such a road could be used only by vehicles with four-wheel drive. The evidence does not indicate whether an access could be obtained through lands of others lying to the east and west without the use of Grandview Road.

To the north of the subject property lies Palmer Park, a tract of 700 acres, owned and used by the city for public recreational purposes. There are two paved roads leading into the park, one from the north and one from the east. These roads converge within the park, and from their junction the graveled Grandview Road runs south and then west past the subject property, the road being owned by the city and maintained with city funds. This is the only present means of access by vehicular traffic to plaintiff's property, and the court so held.

Plaintiff started construction of a residence on the north end of his property, near the road, and applied to the city for a building permit; it was granted, however, with the written admonition that the premises for which the permit was granted would not be allowed access to Grandview Road. Plaintiff had his property surveyed and the north boundary line marked. A six-foot strip between his north boundary line and the traveled portion of the road was occupied by a ditch, across which he constructed an access driveway. The city graded the ditch two feet deeper and installed a wooden barrier. When plaintiff wanted to use this drive-

way, he set the barrier to one side. The city then drove steel fence posts across the front of plaintiff's property, fastening them together with soft wire. When plaintiff used the driveway thereafter, he rolled back this fence. The city then brought in a welding machine and welded a one-inch pipe across the tops of the posts, rendering the further use of the driveway impossible. Plaintiff's building operations were effectively stopped and, as a result, this action ensued.

Plaintiff seeks reversal of the judgment dismissing his action upon two grounds:

1. The trial court erred in finding and holding that Sall's property did not abut upon the highway maintained by the city through Palmer Park designated as Grandview Road.

2. The trial court erred in refusing to admit evidence offered in behalf of Sall to the effect that the city had permitted a number of private roadways to pass across the park property over which various individuals had access to privately owned property.

■ The controlling issue under plaintiff's first argument is whether or not plaintiff has the legal right of ingress to and egress from the subject property by the use of Grandview Road. He contends that he is entitled to this right as a matter of law on the ground that his property abuts upon a public road. In the event that the properties do abut, we have no quarrel with this theory, which is approved by the authorities generally and has been approved by this court. *Lewis v. Lorenz,* 144 Colo. 23, 354 P.2d 1008.

■ It is stipulated in the record that Grandview Road is now, and has been, maintained by the city out of public tax receipt funds. Several property owners along the road testified to the long continued use of the road, not only for occasional means of access to their properties, but also by the general public, without interference by the city. Witnesses testified as to this public use during a period of many years by hundreds of people.

The question for our determination is: Did plaintiff offer competent evidence to establish a right of access, and sustain his burden of proof that his north property line abuts Grandview Road? We answer this question in the negative.

Our statutes do not define the verb "abut." Webster defines the verb as meaning, "to touch at one end, border on — to come to an end — terminate at a point of contact — to border on — reach or touch with an end." Webster gives the following verbal illustration: "Two lots that abut each other." He further defines the noun "abutment" as "the place at which abutting occurs," and again, by illustration, states "at the abutment of two properties."

■ These definitions would indicate that abutting is predicated upon actual contact at the boundary or dividing line. In *Black's Law Dictionary*, the word "abut" is defined as follows:

"To reach, to touch. In old law, the ends were said to abut, the sides to adjoin. * * *. To touch at the end; be contiguous; join at a border or boundary; terminate; to end at; to border on; to reach or touch with an end. * * *. The term 'abutting' implies a closer proximity than the term 'adjacent.' * * *."

In *Millan v. City of Chariton*, 124 N. W. 766 (Iowa 1910), we find the following apt definition: "* * * By the term 'abutting property' is meant that between which and the improvement there is no intervening land. * * *."

■ In *Kemp v. City of Seattle*, 270 Pac. 431 (Wash. 1928) we find the following pertinent statement:

"* * * Property is said to abut upon a street or highway when there is no intervening land between it and such street or highway. * * *.

\* \* \*

"When property abuts, the lot line and street line are in common. * * *."

In *Johnson v. Town of Watertown*, 38 Atl.2d 1, (Conn.

1944), it is stated: "Land abuts a street when there is no intervening land between it and the street."

■ ■ Plaintiff's witness, Kraettli, a qualified engineer and surveyor, who had made about fifty surveys in the area, identified Plaintiff's Exhibit I, a map prepared by him based upon his surveys and which he testified correctly represents the south edge of the traveled portion of Grandview Road with reference to the subject property. At no point does it show any contact between the north boundary line of plaintiff's property and Grandview Road. To the contrary, this exhibit, and also the evidence of some of plaintiff's neighbors, shows that there is a strip of land, varying in width, which separates the northern boundary of the subject property from the road. The trial court found, *inter alia*:

"That 'abutting property' is property having a common boundary and with no intervening land between. That there is a strip of land in varying widths which separates the Northern boundary of plaintiff's tract from Grandview Road and prevents the plaintiff from abutting upon Grandview."

There is ample evidence in the record to support the trial court's finding that there was a strip of land between the plaintiff's land and Grandview Road. The evidence also reveals that the north boundary line is established by a fence, which has been in existence at its present location for more than thirty years, and has been generally recognized, and its use as a boundary line acquiesced in, by the adjoining property owners during the entire period. The fence became the line to establish the boundary between the properties. *Lively v. Wick*, 122 Colo. 156, 221 P.2d 374. Plaintiff's first argument for reversal is not supported by the evidence or the law and therefore must fail.

■ As to plaintiff's second argument, the offer of proof did not include any proposed proof that any other persons used Grandview Road for access to their property, as contemplated by the plaintiff, or that the road

situations within the park were similar to those herein involved. We believe that the court properly limited the evidence to that applicable to the controlling controversy in this case.

■ Generally, we find that the burden of proof was upon the plaintiff to establish his claim that he, as an abutting property owner, had the right as a matter of law to access from his property to Grandview Road. We believe that he did not sustain that burden.

■ The city is not satisfied with that part of the judgment declaring Grandview Road to be a public street and asks that the finding of the court in that respect be corrected to declare that the road is not a part of the public street system of the city, but rather a facility of Palmer Park for the purpose of permitting full use of the park. This issue does not require a determination in view of the affirmance herein of the trial court's finding that the plaintiff's property and the road do not abut and plaintiff's desired access is not permitted. Therefore, that portion of the judgment declaring Grandview Road to be a public street is ordered striken.

A review of the pleadings, the evidence, and the applicable law gives ample reason to support the judgment of the trial court.

The judgment is affirmed.

Mr. Justice Moore and Mr. Justice Frantz dissent.

Mr. Justice Frantz dissenting:

In my view the affirmance of the judgment in this case effects a denial of the use and occupation of Sall's property in a sense equivalent to confiscation. The majority prevailing, his property must remain what it is — so much landscape. Yet, I submit, there are at least four reasons, each equally cogent, why this case should be reversed.

Sall owned a tract of land 100 feet wide by 600 feet

in length. Its width ran east and west and its length north and south. Only the southern approximate 300 feet enjoyed access to a public road known as the Chelton Road. The northern portion of the tract could not be reached from this road because of impassable terrain.

For all practical purposes Sall owned within this 100 by 600 foot tract of land two separate and distinct parcels of land. This was due to the existence of a "sheer crevasse" through the width of the property dividing the south and north portions. According to one of the witnesses, it would take a vigorous climber to ascend from the south to the north portion.

Because of its inaccessibility from the south, the northern portion remained in its natural state. On the southern portion Sall built a residence which he later sold. He then obtained a permit to build a residence on the northern parcel, at which time he was admonished that he would be allowed no access to a road in Palmer Park which skirted this land.

The record discloses that the northern parcel, the subject property, was zoned for residence purposes only. The record also discloses that the road in Palmer Park was gravel-surfaced and at some points it was 7/10ths of a foot from the true boundary line of the Sall tract. It also appears in the record that a fence had been constructed along the width of the Sall property varying in footage from six to eight feet from the traveled portion of the road, and this fence had been in existence for some thirty years. Persons in the area "considered" this fence to be a boundary.

Sall commenced the construction of a residence on the subject property. At a point where the traveled portion of the road was bordered by a drainage ditch some six feet in width, Sall built a crossing from his property to the road. The City barricaded this passage, and Sall brought these proceedings to enjoin the City.

The court found that the north boundary of this tract was contiguous to the south boundary of Palmer Park;

that the road proceeded along and near to the southern perimeter of Palmer Park and near the north boundary of Sall's property; that Sall has no access for vehicular traffic without the use of the road; "that there is a strip of land in varying widths which separates the northern boundary of plaintiff's tract" from the road and prevents Sall from abutting thereon.

In his motion for a new trial, Sall presents a number of grounds therefor, among them being his assertion that the court has deprived him of his property for public purposes without just compensation.

The majority having affirmed the trial court, Sall now has a substantial piece of property upon which he must pay taxes but which he cannot use and occupy for the zoned use. He can only leave it as nature has adorned it. Such a ruling thwarts the policy of the law.

"The right to the use and enjoyment of property for lawful purposes," we once said, "is the very essence of the incentive to property ownership. The right to thus use property is a property right fully protected by the due process clause of the federal and state Constitutions." *Jones v. Board*, 119 Colo. 420, 204 P.2d 560.

Adverting to my opening sentence, I would now state my reasons for reversing the trial court.

I.

*The property abuts the road.* It seems to me that we must use the true boundary line for determining whether the property abuts the road. The evidence regarding the thirty-year-old fence in general is speculative when considered on the question of whether it constitutes a boundary. The exhibits show that there is a sufficient length of road 7/10ths of a foot from the true boundary of Sall's property to invoke, in respect to this intervening property, the doctrine of *de minimis non curat lex*.

The 7/10ths of a foot intervening between the traveled portion of the road and Sall's true property line cannot be put to any park use because of its trifling area. But

such intervening property must be thus usable in order to destroy its character as abutting property. See *Shreveport v. Selber*, 21 So.2d 738 (La. App.).

Where a strip of land 92 feet wide was dedicated for a street and the city improved 90 feet, leaving one foot unused on each side, owners of property touching such strip were abutters. *Richards v. Cincinnati*, 31 Ohio St. 506. A space of about one foot between a person's property line and a sidewalk effects an abutment. *Joplin v. Freeman*, 125 Mo. App. 717, 103 S.W. 130.

## II.

*An owner of property whose access to highway must be gained over a strip of park property 7/10ths of a foot in depth is an abutter.* The cases of *Richards v. Cincinnati, supra, Joplin v. Freeman, supra,* and *Shreveport v. Selber, supra,* sustain the statement that Sall was an abutter in relation to the road in Palmer Park. Throwing further light on this point is the case of *Borghart v. Cedar Rapids,* 126 Iowa 313, 101 N.W. 1120. Using the word "abut" in its strict sense, this case would seem to stand for the proposition that, even though Sall's property does not abut the road, it does abut the park and, hence, he is entitled to access because it is the only means of access.

## III.

*The crossing built by Sall was proper.* The undisputed evidence shows that a six foot ditch immediately adjoined the traveled portion of the road in question, and this ditch abutted Sall's property. Sall constructed a private way over this ditch in order to reach the road. *Lewis v. Lorenz,* 144 Colo. 23, 354 P.2d 1008, sanctions this action of Sall. In that case we held that an "owner of land abutting on a public highway, had a special right or easement across the borrow pit for access purposes to the roadway, not at all points in the boundary but convenient access to and from his property and improvements, subject to reasonable regulations." C.R.S. 1963, 120-3-3, was the fulcrum for our decision.

To like effect is the case of *Barham v. Grant*, 185 Ga. 601, 196 S.E. 43, in which the court declared that the owner could, if necessary to enable him to reach the traveled part of the road, bridge a ditch or construct a grade for that purpose.

*Sall had a right to passage as a way of necessity.* Sound public policy dictates that land should not be rendered unfit for occupancy or successful cultivation, and this is basic to the doctrine recognizing ways of necessity. *Martino v. Fleenor*, 148 Colo. 136, 365 P.2d 247. If there had been a severance of the land north of the fence by reason of the latter's long existence, Sall and his predecessors would nevertheless have retained a way of necessity over it. Divestiture of title to this land in such manner would not disentitle him to such a way. *Hickam v. Golladay*, 83 Ind. App. 569, 149 N.E. 375; *Godman v. Jones*, 180 Ky. 217, 202 S.W. 662.

If he retained a way of necessity over this strip of land six to eight feet in depth, his way of necessity then abutted on the road, since the 7/10ths of a foot is either *de minimis* or should be construed as an abutment, as I have already shown.

For these reasons I would reverse.

MR. JUSTICE MOORE joins in this dissent.