Mr. Justice Frantz
dissenting:
In my view the affirmance of the judgment in this case effects a denial of the use and occupation of Sail’s property in a sense equivalent to confiscation. The majority prevailing, his property must remain what it is — so much landscape. Yet, I submit, there are at least four reasons, each equally cogent, why this case should be reversed.
Sall owned a tract of land 100 feet wide by 600 feet *305 in length. Its width ran east and west and its length north and south. Only the southern approximate 300 feet enjoyed access to a public road known as the Chelton Road. The northern portion of the tract could not be reached from this road because of impassable terrain.
For all practical purposes Sail owned within this 100 by 600 foot tract of land two separate and distinct parcels of land. This was due to the existence of a “sheer crevasse” through the width of the property dividing the south and north portions. According to one of the witnesses, it would take a vigorous climber to ascend from the south to the north portion.
Because of its inaccessibility from the south, the northern portion remained in its natural state. On the southern portion Sail built a residence which he later sold. He then obtained a permit to build a residence on the northern parcel, at which time he was admonished that he would be allowed no access to a road in Palmer Park which skirted this land.
The record discloses that the northern parcel, the subject property, was zoned for residence purposes only. The record also discloses that the road in Palmer Park was gravel-surfaced and at some points it was 7/10ths of a foot from the true boundary line of the Sail tract. It also appears in the record that a fence had been constructed along the width of the Sail property varying in footage from six to eight feet from the traveled portion of the road, and this fence had been in existence for some thirty years. Persons in the area “considered” this fence to be a boundary.
Sail commenced the construction of a residence on the subject property. At a point where the traveled portion of the road was bordered by a drainage ditch some six feet in width, Sail built a crossing from his property to the road. The City barricaded this passage, and Sail brought these proceedings to enjoin the City.
The court found that the north boundary of this tract was contiguous to the south boundary of Palmer Park; *306 that the road proceeded along and near to the southern perimeter of Palmer Park and near the north boundary of Sail’s property; that Sail has no access for vehicular traffic without the use of the road; “that there is a strip of land in varying widths which separates the northern boundary of plaintiff’s tract” from the road and prevents Sail from abutting thereon.
In his motion for a new trial, Sail presents a number of grounds therefor, among them being his assertion that the court has deprived him of his property for public purposes without just compensation.
The majority having affirmed the trial court, Sail now has a substantial piece of property upon which he must pay taxes but which he cannot use and occupy for the zoned use. He can only leave it as nature has adorned it. Such a ruling thwarts the policy of the law.
“The right to the use and enjoyment of property for lawful purposes,” we once said, “is the very essence of the incentive to property ownership. The right to thus use property is a property right fully protected by the due process clause of the federal and state Constitutions.” Jones v. Board, 119 Colo. 420, 204 P.2d 560.
Adverting to my opening sentence, I would now state my reasons for reversing the trial court.
I.
The property abuts the road. It seems to me that we must use the true boundary line for determining whether the property abuts the road. The evidence regarding the thirty-year-old fence in general is speculative when considered on the question of whether it constitutes a boundary. The exhibits show that there is a sufficient length of road 7/10ths of a foot from the true boundary of Sail’s property to invoke, in respect to this intervening property, the doctrine of de minimis non curat lex.
The 7/10ths of a foot intervening between the traveled portion of the road and Sail’s true property line cannot be put to any park use because of its trifling area. But *307 such intervening property must be thus usable in order to destroy its character as abutting property. See Shreveport v. Selber, 21 So.2d 738 (La. App.).
Where a strip of land 92 feet wide was dedicated for a street and the city improved 90 feet, leaving one foot unused on each side, owners of property touching such strip were abutters. Richards v. Cincinnati, 31 Ohio St. 506. A space of about one foot between a person’s property line and a sidewalk effects an abutment. Joplin v. Freeman, 125 Mo. App. 717, 103 S.W. 130.
II.
An owner of property whose access to highway must be gained over a strip of park property 7/10ths of a foot in depth is an abutter. The cases of Richards v. Cincinnati, supra, Joplin v. Freeman, supra, and Shreveport v. Selber, supra, sustain the statement that Sail was an abutter in relation to the road in Palmer Park. Throwing further light on this point is the case of Borghart v. Cedar Rapids, 126 Iowa 313, 101 N.W. 1120. Using the word “abut” in its strict sense, this case would seem to stand for the proposition that, even though Sail’s property does not abut the road, it does abut the park and, hence, he is entitled to access because it is the only means of access.
III.
The crossing built by Sall was proper. The undisputed evidence shows that a six foot ditch immediately adjoined the traveled portion of the road in question, and this ditch abutted Sail’s property. Sall constructed a private way over this ditch in order to reach the road. Lewis v. Lorenz, 144 Colo. 23, 354 P.2d 1008, sanctions this action of Sail. In that case we held that an “owner of land abutting on a public highway, had a special right or easement across the borrow pit for access purposes to the roadway, not at all points in the boundary but convenient access to and from his property and improvements, subject to reasonable regulations.” C.R.S. 1963, 120-3-3, was the fulcrum for our decision.
*308 To like effect is the case of Barham v. Grant, 185 Ga. 601, 196 S.E. 43, in which the court declared that the owner could, if necessary to enable him to reach the traveled part of the road, bridge a ditch or construct a grade for that purpose.
Sall had a right to passage as a way of necessity. Sound public policy dictates that land should not be rendered unfit for occupancy or successful cultivation, and this is basic to the doctrine recognizing ways of necessity. Martino v. Fleenor, 148 Colo. 136, 365 P.2d 247. If there had been a severance of the land north of the fence by reason of the latter’s long existence, Sail and his predecessors would nevertheless have retained a way of necessity over it. Divestiture of title to this land in such manner would not disentitle him to such a way. Hickam v. Golladay, 83 Ind. App. 569, 149 N.E. 375; Godman v. Jones, 180 Ky. 217, 202 S.W. 662.
If he retained a way of necessity over this strip of land six to eight feet in depth, his way of necessity then abutted on the road, since the 7/10ths of a foot is either de minimis or should be construed as an abutment, as I have already shown.
For these reasons I would reverse.
Mr. Justice Moore joins in this dissent.