H. L. A. CULMER, Respondent, v. SALT LAKE
CITY, a Municipal Corporation, Appellant.

THE UTAH STOVE AND HARDWARE COM-
PANY, a Corporation, Respondent, v. SALT
LAKE CITY, a Municipal Corporation, Appellant.

### No. 1479.   (75 Pac. 620.)

1. **Highways: Dedication: Intention: Acceptance.**
    To make a dedication complete, there must not only be an in-
    tention on the part of the owner to set apart the land for
    the use and benefit of the public, but there must be an ac-
    ceptance of the dedication by the public. [1]

2. **Same: Facts Considered.**
    An alley opened as a private way, being closed by owners of
    part of the property, was reopened in part by a compromise
    between the different owners, in which the public took no
    part. Conveyances of abutting property were made "sub-
    ject to a right of way," and "subject to a right of way for
    use of all the owners" of certain of the land, running "with
    the land forever in favor of the heirs." The alley was
    over-arched by the owners, basements excavated beneath,
    and all costs of repairs were borne by the owners. The
    use of the alley was practically confined to the owners of a
    portion of the block, and the use was regulated by the own-
    ers, as to the weight of wagons and loads passing over it,
    and the owners had sometimes closed the alley for periods
    of two months. *Held,* that no intention of dedication as a
    highway was shown.

3. **Same: Operation of Statute.**
    The alley did not become a highway by operation of 1 Compiled
    Laws 1888, section 2066, providing that a highway shall be
    deemed and taken as dedicated, and abandoned to the use
    of the public when it has continuously and uninterruptedly
    been used as a public thoroughfare for a period of ten
    years.

(Decided February 10, 1904.)

Appeal from the Third District Court, Salt Lake
County.—*Hon. W. C. Hall,* Judge.

---

[1] Schettler v. Lynch, 23 Utah 305; 64 Pac. 955.

Action by H. L. A. Culmer against Salt Lake City to restrain the collection of a special tax. Another action, involving the same questions of law and practically the same questions of fact, was commenced against the City by the Utah Stove & Hardware Company. The two cases were consolidated, tried and appealed together. From a judgment in favor of the plaintiffs, the defendant city appealed.

AFFIRMED.

*George L. Nye, Esq.,* City Attorney, and *Walter C. Shoup, Esq.,* Assistant City Attorney, for appellant.

Our contention is that the alleyway was impliedly dedicated to the public prior to 1879.

In an implied dedication there must of course be a unity of two elements: First, an intent to dedicate; second, an acceptance of the dedication. To make a highway by dedication there must be the assent of the owners of the land to its appropriation as a public highway, and its use by the public for such purpose, and for such a length of time, that the public accommodation and private rights might be materially affected by an interruption of the enjoyment. State v. Birmingham, 38 N. W. 121.

"The intention to which the courts give heed is not an intention hidden in the mind of the land owner, but an intention manifested by his acts." City of Indianapolis v. Kingsbury, 101 Ind. 201, 203; Lamar v. Clements, 49 Texas 347; City of Denver v. Clements, 3 Col. 484; Gamble v. St. Louis, 12 Mo. 617; Morgan v. Railroad Company, 96 U. S. 716.

"Any act of the owner clearly indicating an intention to dedicate the land for public use, and its acceptance by the public is sufficient." Brooks v. Topeka, 8 Pac. 392; Quinton v. Burton (Iowa), 16 N. W. 569.

"An acceptance (of a highway) may be implied from a general and long continued use by the public as of right." Elliott on Roads and Streets, page 117; Cook

v. Harris, 61 N. Y. 448; People v. Loehfelm, 102 N. Y. 1; Green v. Elliott, 86 Ind. 53, 68; Steele v. Sullivan, 70 Ala. 589; Eureka v. Croghan, 19 Pac. 485; Reese v. Chicago, 38 Ill. 322; Morgan v. Railroad Company, 96 U. S. 716.

*Messrs. Whittemore & Cherrington* for respondent.

A preponderance of the testimony clearly shows that the strip of land in question in this case is not a public alley, there never having been an intent to dedicate it to public use by the owner. Niles v. Los Angeles, 58 Pac. Rep. 190; American and English Encyclopædia of Law, Vol. 9, 2d Edition, page 36; Silver v. Spangler, 43 Pac. Rep. 617.

A dedication from user will not be presumed or implied unless the use has been adverse, continuous and uninterrupted for the required length of time which the defendants in this case by their pleadings admit should be twenty-one years. American and English Encyclopædia of Law, Vol. 9, 2d Edition, page 42; 7th Century Law Journal, 123; Harkness v. Woodmansee, 7 Utah 227.

This was a private right of way over which the public acquired no rights. American and English Encyclopædia of Law, Vol. 9, page 56, 2d Edition; Silver v. Spangler, 43 Pac. Rep. 617.

An alley kept in repair by the owner, and over which the owner exercises authority and control, although used by the public for many years, is not a public way. Brink v. Collier, 56 Mo. 160; White v. Bradley, 66 Mo. 254; Mayberry v. Inhabitants of Standish, 56 Maine 342; 2 Met. (Ky.) 98.

The fact that a road has been worked and repaired with the knowledge and consent of the owner even, is not sufficient to prove dedication; the intent to dedicate must otherwise appear. Hardy v. Hale, 61 Ill. 192.

To constitute a dedication there must have been a use by the public adverse and exclusive of the use and enjoyment of the property by the proprietor, and not

a mere use by the public under and in connection with its use by the owner, and the dedication must be under such circumstances as to indicate an abandonment exclusively to the community, by the owner of the soil. Talbot et al. v. Grace, 30 Ind. 389; Irwin v. Dixon, 9 How. 10.

Acceptance is an essential element of dedication in a city having a regularly organized city government; user may constitute an acceptance of country roads not so directly under the control of any local board, and where the expense of keeping them up is comparatively light; not so in cities.  City of Detroit v. Railroad Company, 23 Mich. 172.

The barring up of the alley rebuts any presumption of dedication that might exist.  Angell on Highways, sec. 152 (3 Ed.).

STATEMENT OF FACTS.

H. L. A. Culmer brought this action against Salt Lake City to restrain the collection of a special tax, and to have the levy and assessment of such tax declared illegal and void.  Another action, involving the same questions of law, and practically the same questions of fact, was commenced against the city by the Utah Stove & Hardware Company.  The two cases, by stipulation, were consolidated and tried together.  After taking evidence, the trial court found the issues in favor of plaintiffs, and enjoined the collection of the tax, and from that judgment defendant has appealed to this court.

The record, in brief, shows the following facts: The tax mentioned was levied by Salt Lake City against certain property abutting on a certain alley, for the purpose of paving such alley.  The alley was originally laid out and established as a private way, for the use and convenience of the parties owning the ground over which it passed, and extended from Second South street through block 70 of the City Survey to First South street.  About 1879 the heirs of Emiline Free Young, who claimed to be the owner of the land fronting on,

and extending back 100 feet from, First South street, and over which land the alley passed, closed up that part of it.  Other parties, who owned property abutting on the alley, and who claimed an easement in it, protested against the closing of the alley at this point.  In order to avoid a threatened lawsuit, the parties who had thus closed 100 feet of the north end of the alley, as a compromise, opened up and extended the alley from where it had been closed to Commercial street, a street running north and south through the same block, viz., block 70.  Neither the city nor the public in general, so far as the record discloses, took part or showed any interest in this controversy, which resulted in changing the course of the north end of the alley.  One of the deeds to plaintiff Culmer of the land over which the alley passes contains the following clause or proviso: "Subject to a right of way [referring to the alley in question] for travel by wagon and foot passengers." A deed to plaintiff of another parcel of land contains the following proviso:  "Subject to a right of way for use of all the owners of the land owned by the late Emiline Free Young;  . . .  said right of way runs with the land forever in favor of the heirs and assigns of said testatrix."  Each of the plaintiffs herein, in order to keep the alleyway open for their own convenience and that of other parties owning property abutting thereon, in the construction of their buildings (business houses) on the land sought to be taxed, arched and built over the alley, leaving a space large enough for teams and wagons to pass through.  Each of these parties also excavated and extended the basement of their buildings back under this alleyway.  Therefore, the space both above and beneath the alley is, and for 13 years past has been, occupied and utilized by the plaintiffs.  The plaintiff Culmer testified on this point, in part as follows:  "The north side of the alley includes a number of buttresses and structures on the south of our inside wall.  It takes in a permanent stairway, ventilator, and chute for the delivery of goods.  We have a stairway

leading from the archway down into our engine room. We have a coal chute right in the middle of the alley, leading into the coal bin. . . . The floor of the alley is 2x6 stuff nailed together on edge, resting on steel beams for bearings underneath the roadway." Respecting the use that has been made of the alley for the last 13 years, he testified as follows: "This alleyway back of my building has not been open continuously since 1889. We did not have much use for it ourselves in the summer time, and it was frequently closed for weeks. Closed by barriers being put across either one end or the other, padlocked sometimes, usually by my engineer, and I think it was closed up every year. I remember particularly in 1896 it was closed up for two months. It was closed up in 1897. It was closed up year before last, closed up last year, closed this year, and is closed now. The right of way has been open for the use of the heirs of the estate of Emiline Free Young." Samuel E. Hill, a witness for the plaintiff, testified that he "had more or less to do with the alleyway in question. The alleyway has not always been open. It was closed from 1893 to 1895. There was continual travel through the lane. Heavy wagons would shake dirt onto the machines. . . . I used to stop teams going through the alley. . . . That was when the teams were so heavy that they would shake the dirt down and interfere with the lights. It was closed in 1896, in the spring, for two or three months. Closed by putting barriers across. . . . It has been closed more or less every year the last two years. Frequently we put boards up to prevent them going through, and they were taken down for our own teams to go out from the store." Spencer Clawson, chairman of the board of public works of Salt Lake City, was called as a witness for defendant, and testified that he had been a resident of Salt Lake City for more than 30 years. "Have been familiar with the alley for many years, and have known it to be used generally by people who owned

property on it. I have known it to be used by the general public, and particularly by those who abutted on it between Second South and First South—all through there. I do not recollect ever seeing any one in there unless he had some business." And again: "I have seen obstructions there at intervals for the last six or eight months." Joseph A. Sanborn, another witness for defendant, testified that he had been familiar with the alley for eleven years, and, during the last four years of the time, it was kept in repair by private parties owning or occupying property between First and Second South street, and within close proximity to the alley, and further said: "The city never did any repairing to my knowledge. It was always done by private individuals—people who lived along or had property or were using property along the alley. I never called the city's attention to the condition of the alley; never made any effort to get them to repair it." In fact, all the evidence, as a whole, tends to show that the alley has been, and is, used almost exclusively by parties owning or occupying property within its immediate vicinity, and that it never has been used as a thoroughfare by the general public. And the record shows that the first and only time the city ever indicated that it claimed the right to supervise and control the alley as a public highway was when it gave notice of the levy and assessment of the tax under consideration.

McCARTY, J., after stating the facts, delivered the opinion of the court.

The first question presented by this appeal is, was there a dedication by the plaintiffs or their grantors of that portion of the alley which passes over and through their premises, and an acceptance by the public? Land is held to be dedicated when it is set apart by the owner for a public use. "A dedication may be either express or implied. It is express when there is an express manifestation on the part of the owner of his purpose to devote the land to the particular public use, as in the

case of a grant evidenced by writing. It is implied when the acts and conduct of the owner clearly manifest an intention on his part to devote the land to the public use." Schettler et al. v. Lynch et al., 23 Utah 305, 313, 64 Pac. 955. And the authorities all hold that, to make a dedication complete, there must not only be an intention on the part of the owner to set apart the land for the use and benefit of the public, but there must be an acceptance of the dedication by the public.

It is claimed by appellant that the facts in this case establish an implied dedication on the part of the plaintiffs and their grantors. Applying the foregoing rules as declared by this court in the case of Schettler et al. v. Lynch et al., supra, to the facts in this case, can it be successfully maintained that the acts and conduct of the plaintiffs and their predecessors in interest in relation to this alley were of such a character as to induce or justify a well-founded and reasonable belief that they intended to dedicate their interests in the alleyway to the public, to be used as a public highway? We think not. · Elliott on Roads & Streets (2d Ed.), sections 124, 125.

The evidence is undisputed that the use of the alley has been practically confined to parties who owned or occupied property within that portion of block 70 of Salt Lake City Survey which lies west of Commercial street, and through which the alley passes. Of these parties, the heirs and their grantees of the estate of Emiline Free Young have an interest in and a right to use the alley, which right has never been denied or questioned by the plaintiffs herein. And while others owning property in that neighborhood may have used the alley under circumstances and to such an extent as to create an easement therein, which, however, is a question not involved herein, and not necessary for us to decide, yet it is plain that the limited uses made of the alleyway, when considered in connection with the conduct and acts of plaintiffs in relation thereto, were not

such as would warrant or justify a belief that they intended to throw it open as a public highway. The expense of keeping the alley open and in repair has always been borne by private parties who owned or occupied property abutting on or within the immediate vicinity thereof, and never by the public.

Appellant further contends that the alleyway in question became a public highway by operation of law, under section 2066, vol. 1, Comp. Laws 1888, which **3** provides that "all roads, streets, alleys and bridges laid out or erected by others than the public, and dedicated or abandoned to the use of the public, are highways. A highway shall be deemed and taken as dedicated and abandoned to the use of the public when it has been continuously and uninterruptedly used as a public thoroughfare for a period of ten years." In order to bring a case within the foregoing provisions of the statutes, it will be noticed that it must be made to appear that a highway "has been continuously and uninterruptedly used as a public thoroughfare for a period of ten years." Now, the uncontradicted testimony in this case shows that the plaintiffs have not only claimed, but have exercised, the right to close and open at will that portion of the alley, which passes over and through their property. This they have repeatedly done, without any protest being made by either the city or people. On some occasions they have closed the east end of the alley for two months at a time. They have also imposed certain restrictions on parties who desired to take loaded wagons through the alley, which, so far as the record shows, have always been complied with. Therefore we do not think there has been the continuous and uninterrupted use of the alley in question as a public thoroughfare, as is contemplated by the provisions of the statute above referred to.

The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.