## ADNEY et al. v. STATE ROAD COMMISSION OF UTAH et al.

No. 4366. Decided August 7, 1926. (248 P. 811.)

1. INJUNCTIONS—INDIVIDUALS, OCCUPYING FARMS ABUTTING ON ROAD, HELD TO SUFFER SPECIAL DAMAGE BY REMOVAL OF BRIDGE, AUTHORIZING THEM TO RESTRAIN REMOVAL. Where individuals occupying farms abutting on road would be deprived of ingress and egress to their property, or to city for marketing and trad-

ing, or attending school and church, by removal of bridge, they suffered special damage, different from that sustained by general public, and could maintain action to restrain removal.[1]

2. BRIDGES—STATUTE HELD NOT TO GIVE STATE ROAD COMMISSION ANY TITLE TO OR RIGHT TO REMOVE BRIDGE OF ONE COUNTY TO ANOTHER COUNTY AND THERE USE IT (LAWS 1923, c. 65). In action by county to restrain state road commission from removal of county bridge into another county, *held* that powers and duties of state road commission as prescribed by Laws 1923, c. 65, did not give the commission nor the state any right, title, or interest in bridge, or right to remove it into another county and there use it.

3. BRIDGES—CLAUSE IN CONSTRUCTION CONTRACT, UNDER WHICH STATE ROAD COMMISSION CLAIMED OWNERSHIP OF COUNTY BRIDGE, HELD VOID, AS NOT WITHIN STATUTORY POWERS OF COUNTY COMMISSIONERS (COMP. LAWS 1917, § 2802, AND SECTION 1400x24, AS AMENDED BY LAWS 1925, c. 61). Where state road commission, by virtue of inserted clause in road construction contract with county, claimed ownership of old bridge as salvage, and right to remove it to another county and there use it, *held*, such claim was void as not within power of county commissioners under Comp. Laws 1917, § 1400x24, as amended by Laws 1925, c. 61, and of section 2802.

4. HIGHWAYS. Established "highways," under Comp. Laws 1917, § 2802, relating to discontinuance, includes any public highway, and not merely county roads.[2]

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Highway.]

5. BRIDGES. County bridge, no longer required for public use, can only be disposed of under Comp. Laws 1917, § 1400x35, providing for sale and disposition of unnecessary county property.

---

[1] *Muir* v. *Kay* (Utah) 244 P. 901.

[2] *Sowadzki* v. *Salt Lake County*, 36 Utah, 127, 104 P. 111; *Tuttle* v. *Sowadzki*, 41 Utah, 501, 126 P. 959.

Corpus Juris-Cyc. References:

[1]   Injunctions 32 C. J. p. 49 n. 63.
[2]   Bridges 9 C. J. p. 464 n. 68.
[3]   Bridges 9 C. J. p. 439 n. 26.
[4]   Highways 29 C. J. p. 520 n. 36 New; p. 523 n. 68.
[5]   Counties 15 C. J. p. 538 n. 41.

Appeal from District Court, First District, Box Elder County; *M. C. Harris,* Judge.

Action by C. G. Adney and others against the State Road Commission of Utah and others. Judgment for plaintiffs, and defendants appeal.

AFFIRMED.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for appellants.

*William J. Lowe,* of Salt Lake City, and *J. Wesley Horsley,* of Brigham City, for respondents.

STRAUP, J.

A public highway runs from Brigham City in a north-westerly direction to Corinne, Promontory, Tremonton, and on through the state into Idaho. On the record it is designated as an "old state highway." At a point about a mile easterly of Corinne, the road, in the direction of Corinne, runs in a westerly direction through the southern portion of Corinne, thence southwesterly beyond Corinne, and thence north-westerly to a point about a mile northwest of Corinne, the course so described being about 3.72 miles. Just east of the corporate limits of Corinne there is a bridge over which this portion of the road crosses Bear river. This bridge will be referred to as the old bridge. At the point of the old road about a mile east of Corinne the state road commission, in connection with the county commissioners of Box Elder county, laid out and constructed a new road and a more direct route, and in a more northwesterly direction running but a short distance north of Corinne, and thence northwesterly to the point, about a mile northwest of Corinne, where it joins the old road, the distance of the new road being 2.82 miles, thus lessening the distance between the stated points about a mile. The new road crosses Bear river, over which the commission and the county constructed

a new bridge, about or a little more than a mile east of
Corinne. At the new bridge the distance between the old
and the new road is a little more than a quarter of a mile,
and a short distance west of Corinne the distance between
the new and the old road is a little more than three-fifths
of a mile. The new bridge is more than a half mile east
and about a quarter of a mile north of the old bridge. The
road commission and its contractor, the C. F. Dinsmore
Construction Company, acting under its authority, were
about to dismantle and tear down the old bridge which is
about 200 feet long and of steel and concrete construction,
and to remove and use it on a road in Emery county.

The individual plaintiffs, owning and occupying farms
abutting the old road east of Corinne and east of the bridge,
and the town or city of Corinne, brought this action to re-
strain the road commission and its contractor from dis-
mantling or tearing down the old bridge. Box Elder county
and its commissioners were also made parties. They ap-
peared and averred that the bridge belonged to the county,
and that they had not abandoned nor released it or the old
road, and that the road commission had no right, title, or
interest in or to the bridge and had no right or authority
to dismantle or remove it. The state road commission as-
serted title to the ownership of the bridge and the right to
remove and use it as contemplated, chiefly in virtue of a
contract which it had entered into with the county commis-
sioners with respect to the construction of the new road,
but such right was denied by the plaintiffs and the county.
The case was tried to the court, who, on findings in favor
of the plaintiffs, enjoined the road commission from tearing
down and removing the bridge, from which judgment the
road commission has prosecuted this appeal.

Though the court found that prior to 1875 the bridge was
constructed and maintained by the town or city of Corinne,
yet since about that time the county had entered into a con-
tract with the city for a location and reconstruction of the
bridge across the river at the same place, for the use and

benefit of the public generally, including the citizens in and near Corinne, and the bridge thereafter having been maintained by the county with public funds, and as the bridge was so maintained outside of the corporate limits, the court held that the town or city of Corinne had no such special interest in the bridge or highway as to enable it to maintain the action. No complaint is made of that ruling and hence we lay it aside.

The appellant, however, contends that none of the individual plaintiffs had any special interest in the bridge or highway or will suffer any special injury or damage, if the bridge is removed, different from that suffered or sustained by the general public, and that hence none of them were entitled to maintain the action. But the evidence shows and the court found that the old road was necessary for ingress and egress to and from the farms owned and occupied by the individual plaintiffs and others abutting the old road east of the bridge, and that without the bridge they had no means of ingress and egress to and from their farms, or to Corinne city for the purpose of marketing their crops, or of trading and shopping, or of attending public schools and churches in Corinne, for all of which purposes the bridge and highway were used by them and their predecessors continuously since and prior to 1875. In other words, while the new road affords the general traveling public from Brigham City through Corinne, and thence on northwesterly through the state, equal, if not better, means and a somewhat shorter distance than the old road, still the general public, if the old bridge is removed, will not suffer the damage or injury that will be suffered by the plaintiffs and by those whose farms east of the bridge abut the old road. They, as found by the court, will be deprived of ingress and egress to and from their farms, and of marketing and trading in Corinne, or there attending public schools or churches, except as they travel easterly on the old road, if it be kept open and in condition for travel, to a point where it joins the new road, and thence

back northwesterly to Corinne a distance of several miles. As is seen, the change made by the construction of the new road or highway is not a mere alteration or improvement of the old road, but is in effect the establishment of a new course or route or road, and the removal of the bridge will, as found by the court, in effect constitute an abandonment of the old road. Under the circumstances, we think the removal of the bridge will cause the individual plaintiffs such a special damage as is different in kind and not merely in degree from that which will be suffered by the general public, and, hence, such individual plaintiffs had the right to maintain the action. 13 R. C. L. 75; 29 C. J. 626; 2 Elliott, Roads and Streets (3d Ed.) § 854.

The case of *Muir* v. *Kay* (Utah) 244 P. 901, on its facts, is dissimilar from the case here, and hence readily distinguishable. However, in this case the county itself appeared and averred its ownership in and to the bridge, alleged that the road commission had no right or authority to remove it, and objected to its removal and to a vacation or abandonment of the old road, and averred that no action had been taken by it or its commissioners as to any abandonment or vacation of the old road or of the bridge, or as to its removal or other disposition of it. Thus, for such additional reason, had the court before it proper parties entitled to maintain the action and to seek injunctive relief against a wrongful removal of the bridge. That the old road was established and continuously used as a public highway for a half century or more, and the bridge was constructed and continuously maintained out of public funds and used as a part of such highway for such length of time, is not disputed.

Chapter 65, Laws of Utah 1923, defining the powers and duties of the state road commission relating to state highways, so far as here material, gives the commission power:     2

" * * * (a) To make all contracts for the construction and maintenance of highways. * * *

"(d) To formulate and adopt rules and regulations for the expenditure of public funds for the construction, improvement, maintenance of highways, and other purposes authorized by law, and for letting of contracts for any work which the commission is authorized by law to do.

"(e) To determine what portion or portions of any state highway shall be improved at the expense of the state.

"(f) To make argreements on behalf of the state of Utah, with the United States government or any department of the same, in any manner affecting the state roads of the state.

"(g) To make written agreements on behalf of the state with any county, city or town, or road district of the state for the improvement or maintenance of any part of the state road, or at the joint expense of the state and county, city or town, provided, that the state road commission shall not undertake improvements of the state roads, or any road, without the co-operation of the state road commision and county commissioners."

In the exercise of its powers and in the performance of its duties, as prescribed by the statute we do not see anything in the statute whereby the commission or the state is given any right, title, or interest in or to any property of the county or in or to any bridge of the county, or any right to take and remove a bridge or any property of one county into another county and there use it, especially where such use to be made of the bridge in such other county bears no relation whatever to nor has anything to do with the work and improvement made in the county where the bridge is located and from which it is to be removed. That the statute gives the commission any such right or power is not seriously contended.

The chief claim made is this: The state road commission entered into a written co-operative agreement with the county, with respect to the construction of the new road, which was claimed to be a federal aid project.     3 The contract is a printed form usually adopted in such case with the necessary blanks filled in. In such contract, not anything is mentioned or any reference made to the bridge or to any other property, or to the passing of title, or acquiring any property of any kind, or to the re-

moval or use of any property of any description. The contract but refers to the construction of the new road, the description of the work involved, the surveys, plans and estimates, maintenance, funds involved, payments, etc. But on the top of one of the printed pages the state road commission, in typewriting, inserted this clause:

"It is mutually understood and agreed that all materials salvaged, as a result of the construction work covered by this agreement, shall become the property of the commission without cost."

It is in virtue of that clause that the commission lays claim of ownership to the old bridge, and a right to remove it and take it to Emery county,. and there use it. Evidently on the theory that the clause was ambiguous, the court permitted testimony to be given to show in what sense the parties to the contract regarded it. So testimony was given on behalf of the commission that the parties thereby meant and understood the old bridge to be salvage, and that, at the time of entering into the contract, conversations were had with respect to the bridge to the effect that it was to become the property of the commission. On the other hand, testimony was given on behalf of the plaintiffs and of the county that no reference whatever was made and no conversation had with respect to the bridge, and that it at no time was mentioned or referred to in any of the negotiations. As to that the court found that while the road commission inserted the clause in the contract, yet neither the bridge nor any other material is specifically mentioned or included in the contract, and further found that no special understanding as to whether or not the said bridge constituted salvage was ever had as between the county commissioners of Box Elder county and the state road commission. And the court also finds that said Box Elder county, and the commissioners thereof, now claim that the said bridge does not constitute salvage, and that the bridge is claimed by, and belongs to, the said Box Elder county, and the said county requests that the said bridge remain as now located. In that connection the court further found that the road com-

mission inserted a provision in the contract whereby it was to receive all salvage through the new construction work, "and that the road commission now claims the old bridge by reason thereof, but the court further finds that said bridge belongs to Box Elder county as set out and claimed by the county commissioners of Box Elder county, and that any claim of the state road commission and the members thereof to said bridge, under and by the terms of said agreement, is void and of no effect, and contrary to and in express violation of the provisions of the statutes of this state relating to the sale and disposition of county property."

.Thus, on the evidence adduced, the court found that no understanding was had between the parties that the bridge was included or was intended to be included within or under the words "materials salvaged as the result of construction work;" and from such language it would seem' that the bridge is not anything fairly implied or contemplated within it. In the next place, though it be regarded that in the contemplation of the parties they by the use of such language intended the bridge to be salvage, yet, as found by the court, the commissioners could not lawfully so dispose of such property of the county. Section 1400x24, Comp. Laws Utah 1917, as amended by chapter 61, Laws Utah 1925, provides that the board of county commissioners shall have power,

"To lay out, maintain, control, erect, and manage public roads * * * and bridges within the county, outside of incorporated cities * * * provided, that the board shall not change or alter the location of any public highway or sidewalk that has had public money or poll tax expended upon it, unless a petition signed by a majority of the freeholders of the precinct wherein such change is proposed ask for such change."

By section 2802, Comp. Laws Utah 1917, it is provided that,

"All highways once established must continue to be highways until abandoned by order of the board of county commissioners of the county in which they are situated, or by judgment of a court of competent jurisdiction."

The bridge was an essential part of the road, and itself a highway or a part of it. Elliott, Roads and Streets, §§ 32, 33. Thus it is seen that the procedure to discontinue, vacate, or abandon a highway is statutory, which       4 must be strictly followed and complied with, else the proceeding to discontinue or vacate or abandon it will be void. 2 Elliott, Roads and Streets, §§ 1172 and 1182; 29 C. J. 523. And to that effect are the cases of *Sowadzki* v. *Salt Lake County*, 36 Utah, 127, 104 P. 111, and *Tuttle et al.* v. *Sowadzki*, 41 Utah, 501, 126 P. 959. No claim is made that such statutes were in any particular complied with, or that the county commissioners had taken any action whatever with respect to a vacation or abandonment or discontinuance of the old road or of the bridge. The only claim made in such respect is in virtue of the inserted clause in the contract, but as is readily seen, such in no respect is a compliance with the statute. Confessedly, the old road and the bridge for 50 years constituted established public highways, and during such period were continuously used as such, and under the decisions of this court they "continued to be highways until abandoned by order of the board of county commissioners," or by judgment of a court of competent jurisdiction. Admittedly, no such order or judgment was ever sought or made.

In such connection the claim made is that the statutes refer only to county roads and not to state roads. But the statute provides that *"all highways, once established,* must continue to be highways until abandoned by order of the board of county commissioners," and that the board "shall not change or alter the location *of any public highway* or sidewalk that has had public money or poll tax expended upon it, unless a petition signed by a majority of the freeholders of the precinct wherein such change is proposed ask for such change." The act creating the state road commission, while it gives the commission power to make all contracts for the construction and maintenance of state highways, to determine what portion or portions of the state

highways shall be improved at the expense of the state, to to make written agreements on behalf of the state with the county for the improvement and maintenance of any part of the state road at joint expense of the state and the county, yet, it does not give it any power to change or alter the *location of any public highway,* whether state or county, or to *vacate or abandon any established public highway,* whether county or state.

Further, among the powers conferred upon county commissioners is the power to sell "unnecessary property of the county." In such respect section 1400x35, Comp. Laws Utah 1917, provides that the commissioners shall have power to sell at public auction at the courthouse door, after 30 days' previous notice given by publication in a newspaper published in the county, or, if no paper is published in the county, by posting in five public places in the county, and to convey to the highest bidder for cash "any property belonging to the county no longer required for public use," paying the proceeds into the county treasury for the use of the county. The court found, and we think properly, that the bridge was property belonging to Box Elder county, and, hence if it was no longer required for public use, the county commissioners could sell and dispose of it only as provided by that section. We think that is clear. Of course no attempt was made to so sell or dispose of the bridge. In that connection the state road commission contends that the bridge belonged to the state and not to the county. We think the contention untenable. We do not find anything in the statute to warrant such a conclusion, and indeed the road commission lays claim to the bridge, not in virtue of any statute, but of the inserted clause in the contract which, as we have seen, has no binding effect.

We are therefore of the opinion that the judgment of the court below should be affirmed with costs. Such is the order.

GIDEON, C. J., and THURMAN, FRICK and CHERRY, JJ., concur.