467 P.2d 605

**John W. CHRISTENSEN, Plaintiff and Appellant,**

v.

**LELIS AUTOMATIC TRANSMISSION SERVICE, INC., Defendant and Respondent.**

**No. 11847.**

Supreme Court of Utah.

April 3, 1970.

1. Prows v. Hawley, 72 Utah 444, 456, 271 P. 31, 35 (1928).

2. Frehner v. Morton, 18 Utah 2d 422, 424, 424 P.2d 446 (1967).

J. Lambert Gibson, Salt Lake City, for appellant.

Joseph J. Palmer, of Worsley, Snow & Christensen, Salt Lake City, for respondent.

CALLISTER, Justice:

Plaintiff appeals from a judgment dismissing his complaint on the ground that it does not state a claim upon which relief can be granted. Plaintiff filed his complaint; defendant, in response, filed a motion to dismiss under Rule 12(b) (6), U.R. C.P. The motion came on for hearing, at

which time the trial court by interlineation added a few words to the complaint, which the court characterized as an amendment. Defendant renewed its motion to dismiss, which the court granted. Plaintiff's action was dismissed with prejudice.

Plaintiff's complaint was set forth in 19 paragraphs; he claimed that defendant advertised extensively that it repaired transmissions, and in connection therewith furnished free towing, checking and inspection, and guaranteed the results of its work. Plaintiff's automobile developed transmission trouble in the intersection of a street in downtown Salt Lake City. Plaintiff, being influenced by defendant's advertising, called defendant, who towed plaintiff's vehicle to its place of business. Subsequently, defendant informed plaintiff that his transmission could not be overhauled but needed replacing with a remanufactured, pretested transmission, which they advertised to equal or surpass factory specifications and which they could fully guarantee.

Plaintiff inquired as to the expense and was shown a price quotation schedule, indicating $169.50. Defendant had advertised that it had a set price quotation and that it had "No 'ups' in price." Plaintiff signed a work order. The next day, defendant informed plaintiff that a part of the differ-

ential had to be replaced and that this could be accomplished without too much cost. When plaintiff went to pick up his car, he was informed that the charges were $384.77, since the guarantee was not in force unless the converter was replaced. Plaintiff requested 30 days in which to pay the account and was informed that this was against company policy but that credit was available through an outside source. Defendant had advertised easy terms—up to 24 months to pay. Defendant then executed a promissory note with a time differential of $45.31.

Plaintiff inquired about the guarantee and was informed that it was on the back of the work sheet. The guarantee stated in bold, large-faced type: "12,000 MILE GUARANTEE + 12,000 MILE WARRANTY." Underneath the foregoing was a statement that the transmission was guaranteed for 12 months or 12,000 miles whichever occurred first, subject to the following provisions. The provisions, in fact, guaranteed the transmission to be free from defects as to workmanship and materials for 180 days or 6,000 miles, whichever occurred first. An additional 180 days or 6,000 miles guarantee period was provided at a cost of 65% to the purchaser of prevailing retail price on repairs or replacement should the transmission become defective.[1]

1. See Seal v. Tayco, Inv., 16 Utah 2d 323, 326, 400 P.2d 503 (1965), wherein this court cited the well-recognized doctrine that it seems manifestly unfair to permit one who formulates a contract to so fashion it as to mislead the other party

Eleven months and 11,583 miles later, plaintiff's transmission would not function properly; so he returned the vehicle to the defendant. Defendant informed plaintiff that the repair work would cost about $200 and that it would not proceed without plaintiff's authorization and agreement to pay.

Subsequently, this action was filed. Plaintiff has alleged that he relied on the newspaper advertisements of defendant, which expressed that a person could depend on a replacement transmission to be trouble-free and expense-free for at least an equal or greater period than the life of the original transmission, to wit: 52,901 miles. Plaintiff alleged that defendant's advertising was further fraudulent in that the original towing which brought the car to defendant's shop was assessed to plaintiff, contrary to the free towing as advertised; that defendant at all times failed to make the set price quotations, as advertised; that defendant installed a transmission not meeting the specifications guaranteed for the same and failed to honor the advertised guarantee of 100% parts and labor, and that all of these acts constituted a wilful and malicious failure and refusal to comply with the representations made to the public and particularly to plaintiff;

that plaintiff had been damaged as a direct and proximate result of defendant's negligence and failure to perform. Plaintiff pleaded for damages equal to the cost of the purported repair of his car, for the loss of the use of the vehicle and for exemplary damages.

In Blackham v. Snelgrove,[2] this court observed that under Rule 8(a), U.R.C.P., a complaint is required only to give the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved. A complaint does not fail to state a claim unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim.

Plaintiff has alleged certain tortious conduct on the part of the defendant (false, deceptive, or misleading advertising), which has proximately caused harm to plaintiff, and the nature and amount of the damages sustained.

Section 76-4-1, U.C.A.1953, provides:

Every person, whether acting on his own behalf or on behalf of another, who, with intent to sell or in any way dispose of real or personal property, * * * service or anything of any nature what-

---

by setting forth a clearly apparent promise or representation in order to induce acceptance, and then designedly "burying" elsewhere in the document, in fine print, provisions which purport to limit or take away the promise, and/or preclude recovery for failure to fulfill it.

2. 3 Utah 2d 157, 160, 280 P.2d 453 (1955).

soever offered by such person, directly or indirectly, to the public for sale, use or distribution, * * * or to *induce any member of the public to enter into any obligation relating thereto,* or to acquire title thereto, or any interest therein, publishes, disseminates, circulates, or causes to be published, disseminated or circulated, or who in any manner places, or causes to be placed, before the public in this state, by any newspaper, magazine, * * * or in any other manner whatever, an *advertisement regarding such property or service so offered to the public,* which advertisement shall contain any statement, representation or assertion concerning such property or service, or concerning any circumstance or matter of fact connected in any way, directly or indirectly, with a proposed sale, performance or disposition thereof, *which statement, representation or assertion is false in any respect, or which is deceptive or misleading,* and which is known, or by the exercise of reasonable care could be known to be false, deceptive or misleading, to the person publishing, disseminating, circulating or placing before the public such advertisement, is guilty of a misdemeanor. [Emphasis added.]

 In Ritholz v. City of Salt Lake,[3] this court observed that if an advertiser actually overreaches or deceives, he is in violation of the law against such practice (Sec. 76–4–1, U.C.A.1953), and a remedy is available. In Ellis v. Hale,[4] this court stated that in some instances negligence may be predicated upon the violation of an ordinance or statute. The purpose of Section 76–4–1, U.C.A.1953, appears to be to protect and to promote the public health, safety and welfare by establishing rules regulating the conduct of individuals, inter se. If such be the purpose, a violation of the statute may give rise to civil liability.

 Plaintiff has pleaded an abrogation of a duty owed by defendant to plaintiff, for which there is a statutory standard, a harm proximately caused by this violation of duty, and damages. Under these circumstances there is no basis for this court to hold *with certainty* that plaintiff would be entitled to *no relief* under any state of facts which could be proved in support of the claim.

The judgment of the trial court is reversed and the cause is remanded for further proceedings. Costs to plaintiff.

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting):

I dissent, and in doing so, concede that the statement of facts recounted in the main opinion substantially is accurate so

3. 3 Utah 2d 385, 390, 284 P.2d 702 (1955).

4. 13 Utah 2d 279, 282, 373 P.2d 382 (1962).

far as it goes. However, I think the opinion is more significant for what it does not say, appearing to tell but half the story reflected by *all* of the conceded facts, resulting in but half opinion and a wholly erroneous conclusion.

It is suggested that the main opinion is faulted by I) choosing facts taken out of full context, which, absent equally significant facts plausibly but inaccurately support its conclusion; by II) raising a point on appeal for the first time, which was advanced by no one in either brief or argument, and III) by citing authorities neither espoused by anyone else, cited by anyone else, or claimed to be authority in this case by anyone else.

As to I): The main opinion does not tell us that after "plaintiff inquired as to the expense and was shown a price quotation schedule, indicating $169.50," *he nonetheless signed a work order* not only calling for the $169.50, but for required parts, towing and sales tax charges, totalling $384.77, —all of his own choosing and voluntary accomplishment, and that he actually *paid for* the job by voluntarily executing and delivering a 24-month deferred time installment note for $430.08. This he did not have to do. It was completely inconsistent with his assertion that he relied on newspaper ads that represented that the whole job would be done for $169.50. Before knowingly obligating himself on the note, he could have walked away from the deal instead of walking into a contract.

The main opinion does not tell us that after plaintiff had driven a little over 5,000 miles, the defendant, without any charge, serviced the car and made necessary adjustments. With only a few miles left to take advantage of the 12,000 mile guarantee (plaintiff having driven 11,583 miles), plaintiff returned to defendant complaining that the car was not operating satisfactorily. The main opinion does not say that after defendant told plaintiff that repairs would be necessary, the plaintiff, in his complaint, distinctly stated that when defendant would not undertake the repairs "without plaintiff's authorization and agreement to pay for same," the plaintiff further maintained that "the trouble should be corrected at defendant's expense," and towed his car away without any offer whatever to pay the 65% which he himself had agreed to pay under the circumstances here, by actually signing the very written guarantee agreement which he now concedes in his own complaint was not binding.

The facts related above, not accounted for in the main opinion, were facts that the plaintiff himself alleged in his own complaint. They were so inconsistent with any theory that plaintiff had stated a cause of action either ex contractu or ex maleficio, as to burden the rules of procedure with a questionable unreason. It appears

to me to be a classic case for the application of a summary judgment based on the absence of any litigable genuine issue of fact.

As to II): The thrust of the main opinion is bottomed on a criminal statute—Title 76–4–1, U.C.A.1953, —having to do with false advertising. Nowhere in plaintiff's brief or oral argument can be found any citation or suggestion of anybody's reliance on this statute, which this court now refers to in order to reinforce an erroneous conclusion in favor of plaintiff. Defendant has had no opportunity whatever to meet any claim based on a violation of any statute, and it would seem to be a bit disquieting for defendant to be required to meet this unexpected fait accompli by the circuitous and often discouraging route of a petition for rehearing.

As to III): The main opinion, not the plaintiff or anyone else, quotes Ritholz v. City of Salt Lake, as authority for its conclusion, saying that in that case "this court *observed* that if an advertiser actually overreaches or deceives, he is in violation of the law against such practice (Sec. 76–4–1, U.C.A.1953), *and a remedy is available.*" This gratuity is nothing more than apologetic dictum in Ritholz, not found even in any of the syllabi. It is purportedly supported by a footnote saying "Art 1, § 1 of the Utah Constitution guarantees freedom of expression, but holds individuals 'responsible for the abuse of that right.'" The main opinion by saying this court "observed" such and such, recognizes the obiter's lack of authority, but fails to add the rest of the paragraph, that seems to be so fitting in the instant case, to the effect that "It should be noted that the law cannot be made, nor could one be enforced, which would entirely protect the completely naive and gullible." It is further significant to note that in Ritholz, no beneficial relief was given to anyone because of any violation of a statute. Contrariwise, relief actually was given the vendors of the spectacles (not transmissions) *against* the statute itself. It is no authority to support the main opinion, —but simply a bit of altruism, deifying what we appellate judges not too infrequently do: Contribute inoffensive but impotent and unnecessary literary gifts to equally unnecessary enlightenment. The only other authority cited in the main opinion, Ellis v. Hale, is one involving zoning ordinances. Although stating that in *some* instances negligence may be predicated upon the violation of an ordinance or statute, —another obvious dictum, —such statement immediately was followed by an enlightened "However," followed by a conclusion that the ordinance was inapplicable in that case.

The trial court should be affirmed. (Emphasis added.)