**Glen S. MASON, Plaintiff and Appellant,**

v.

**STATE of Utah and Utah Department of Transportation and Utah State Road Commission, Defendants and Respondents.**

**No. 17744.**

Supreme Court of Utah.

Nov. 15, 1982.

Roger J. McDonough, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Stephen C. Ward, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

OAKS, Justice:

This controversy over the ownership of land underlying an abandoned highway across appellant's property presents two questions: (1) When the State acquired the disputed strip by warranty deed, did it acquire a fee simple interest or only an easement? and (2) Does the abutting landowner (appellant) have a private easement along some part of the abandoned highway?

Appellant conveyed the land in question to the State by warranty deed in 1951. The deed described a strip of land across appellant's property. Highway 191 was thereafter constructed across this strip of land. In 1976, after a new freeway was constructed, the State formally abandoned Highway 191, informing appellant that if he did not buy the strip of land for $3,675, it would be sold to a third person. Appellant paid the sum to the State under protest. About that time, the State tore up and destroyed portions of the abandoned highway. Appellant had used this highway for over 20 years to travel to Plymouth on the south and to Malad, Idaho, on the north.

In 1978, after filing notice with the State pursuant to U.C.A., 1953, § 63–30–12, appellant brought this action seeking (1) a judgment against the State for the return of his $3,675, plus interest, as well as an order restraining the State from conveying the disputed strip to any third party, and (2) a judgment requiring the State to restore the portions of Highway 191 that had been impaired, torn up, or blocked. The district court granted the State's motion to dismiss both causes of action, and this appeal followed.

## I. CONVEYANCE OF FEE SIMPLE OR EASEMENT

Appellant's claims for return of the $3,675 purchase price and a restraining order are based on the contention that in 1951 the State acquired only a right-of-way, not a fee simple interest, in the disputed strip. This contention relies on two statutes in effect in 1951.

The first, U.C.A., 1943, § 104–61–2, is part of the chapter on eminent domain. It states in pertinent part:

The following is a classification of the estates and rights in lands subject to be *taken for public use:*

(1) A fee simple, when taken for [purposes unrelated to the instant case].

(2) An easement, when taken for any other use. [Emphasis added.]

Since the disputed strip was conveyed to the State by warranty deed, it was not "taken for public use" within the meaning of this statute having to do with condemnation proceedings and eminent domain. Consequently, this statute does not direct the outcome of this case.

■ Appellant also relies on a statutory provision in the chapter on "Highways," U.C.A., 1943, § 36–1–7. This section, which was repealed in 1963 but which was in effect at the time the disputed land was acquired, states:

By taking or *accepting* land for a highway the public acquires only the right of way and incidents necessary to enjoying and maintaining it.[1] [Emphasis added.]

Appellant argues that under this section the State was statutorily incapable of acquiring a fee simple interest in land "for a highway" and therefore only acquired an easement under appellant's 1951 warranty deed.

The key issue on the applicability of § 36–1–7 is the meaning of "accepting." Appellant argues that "accepting" should be read broadly to embrace the receipt of a deed in a negotiated purchase. The State contends that in this context the word "accepting" should be construed to refer solely to accepting land dedicated by usage as a highway. Neither party cites any Utah precedents conclusively construing this statute on the issue before us.[2] Considering this statute in light of its apparent purpose and the desirability of harmonizing its

meaning with that of other statutes, we conclude that the construction advocated by the State and adopted by the district court is the correct one.

The history recited in Justice Howe's concurring opinion is persuasive evidence that the word "accepting" in the quoted sentence of U.C.A., 1943, § 36–1–7, was intended to refer only to highway lands received by dedication. As to highway lands received in that manner, the statute was therefore declaratory of the common law: the original owner retained the fee, and the public acquired only an easement. *Barclay v. Howell's Lessee,* 31 U.S. (6 Pet.) 498, 512, 8 L.Ed. 477 (1832). But there is nothing in the history or interpretive decisions to suggest that this statute was meant to apply to lands the State acquired by warranty deed. In fact, such an interpretation would conflict with another early statute prescribing the effect of warranty deeds as passing a fee simple title, U.C.A., 1953, § 57–1–12, and it would also deny the State a power (to acquire fee simple title) routinely exercised by individuals and corporate bodies. Being unwilling to accept either of those results without statutory language more compelling than we have in this case, we conclude that § 36–1–7 did not prevent the State from acquiring a fee simple title under appellant's warranty deed to this strip of land in 1951. For the reasons stated here and in Justice Howe's concurring opinion, the district court's order dismissing appellant's action for the return of his $3,675 and for other relief related to his claimed ownership of the land will therefore be affirmed.

## II. ABUTTING LANDOWNER'S EASEMENT OVER ABANDONED HIGHWAY

Appellant's second cause of action alleged that he "has used [Highway 191] continu-

---

1. In contrast, the current provision, enacted in 1963, provides that title to real property acquired by "purchase, condemnation, or otherwise, for highway rights of way or other highway purposes, may be in fee simple or any lesser estate or interest." U.C.A., 1953, § 27–12–101.

2. This section has been construed in three opinions of this Court, but none resolves the present issue. *White v. Salt Lake City,* 121 Utah 134, 239 P.2d 210 (1952); *Hall v. North Ogden City,* 109 Utah 304, 166 P.2d 221 (1946), vacated on other grounds, 109 Utah 325, 175 P.2d 703 (1946); *Brown v. Oregon Short Line Railroad Co.,* 36 Utah 257, 102 P. 740 (1909).

ously since 1953 for access to and from his land, and has no other direct, convenient route from his land to the towns of Plymouth [Utah] on the South and Malad [Idaho] to the North." Appellant does not dispute that the State could legally abandon and cease to maintain Highway 191, but he argues that its blocking or destroying portions of the highway impaired his private easement of access to and along the abandoned way. The record contains no information on appellant's access to the expressway or frontage roads, on natural obstacles, or on the relative distances he had to travel before and after the abandonment of Highway 191.

■ Except where changed by statutes pertaining to limited access highways, U.C.A., 1953, § 27–12–2(5), § 27–12–111,[3] an abutting landowner has a private easement of ingress and egress to existing public highways. *Bailey Service & Supply Corp. v. State Road Commission*, Utah, 533 P.2d 882, 883 (1975); *Utah Road Commission v. Hansen*, 14 Utah 2d 305, 309, 383 P.2d 917, 919 (1963); *State Road Commission v. Rozzelle*, 101 Utah 464, 467, 120 P.2d 276, 278 (1941); *Sall v. City of Colorado Springs*, 161 Colo. 297, 301, 423 P.2d 11, 13 (1966).[4]

■ This private easement of access has been held to survive the abandonment or vacation of the public highway. *Adney v. State Road Commission*, 67 Utah 567, 248 P. 811 (1926); *Hague v. Juab County Mill & Elevator Co.*, 37 Utah 290, 107 P. 249 (1910); *Sevener v. Faulkner*, 253 Ark. 649, 488 S.W.2d 316 (1973); *Paul v. Wissalohican Camp Co.*, 104 Ohio App. 253, 148 N.E.2d 248, 250 (1957); 39 Am.Jur.2d *Highways, Streets, and Bridges* § 185 (1968); *Annot.*, 150 A.L.R. 644, 657 (1944). Since appellant's second cause of action invoked this principle with "fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation in-

volved," *Blackham v. Snelgrove*, 3 Utah 2d 157, 161, 280 P.2d 453, 455 (1955); *Christensen v. Lelis Automatic Transmission Service, Inc.*, 24 Utah 2d 165, 168, 467 P.2d 605, 607 (1970), it should not have been dismissed for failure to state a claim.

■ The State suggests two other possible grounds to support the dismissal of appellant's second cause of action: (1) newly constructed roads provide appellant equal or better access to his property, and (2) appellant has already received compensation for any loss of access to his property. Both these grounds raise issues of fact and therefore cannot support a dismissal, which requires a showing "that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Christensen v. Lelis Automatic Transmission Service, Inc., supra*. Both these defenses remain for consideration on remand.

Since this cause of action must be remanded for further proceedings, we deem it appropriate to clarify the nature and extent of the abutting landowner's easement of access and its relation to the rights of other property owners along the way. We limit our comments to matters that are likely to be germane in the resolution of this controversy.

■ *Hague v. Juab County Mill & Elevator Co., supra*, held that the enlargement of a flume between the abutting property and a partially abandoned public street violated the property owner's right to "a reasonably convenient passageway" from his property to the street. 37 Utah at 295, 107 P. at 251. The Court declared:

While the public may abandon a street or highway in so far as it affects the rights of the public therein, such an abandonment, however, will not affect the rights of the abutting owner with respect to the

---

**3.** *See generally*, Note, "Freeways and the Rights of Abutting Owners," 3 Stan.L.Rev. 298 (1951).

**4.** The abutting owner's right of access is not a prescriptive easement. A prescriptive ease-

ment cannot arise over land while it is subject to public use, since use in common with the general public is regarded as permissive. *Thurman v. Byram*, Utah, 626 P.2d 447, 449–50 (1981).

use of an easement he may have in the street for the purposes of ingress and egress to and from his premises.

37 Utah at 296, 107 P. at 252. This decision established that the abandonment of a public way will not deprive an abutting landowner of whatever "easement he may have in the street for the purposes of ingress and egress to and from his premises." But it did not define the nature, the extent, or the prerequisites of the "easement he may have." For example, the Court's opinion does not reveal whether this landowner had any other access to the property abutting the street or how his easement related to the portion of the street that was abandoned and the portion that was not.

■ In *Adney v. State Road Commission, supra,* the State, as part of the construction of a new highway, had attempted to abandon a 3.72-mile segment of old highway near the town of Corinne, and to remove its bridge over the Bear River. Although the new highway would afford the general traveling public better access through the area, farmers whose lands abutted the old road objected to the removal of the bridge because this would deprive them of reasonable access to Corinne. This Court concluded that the plaintiffs could maintain their action because they had established "such a special damage as is different in kind and not merely in degree from that which will be suffered by the general public. . . ." 67 Utah at 572, 248 P. at 812. The Court explained that conclusion as follows:

> [T]he evidence shows and the court found that the old road was *necessary for ingress and egress* to and from the farms owned and occupied by the individual plaintiffs and others abutting the old road east of the bridge, and that *without the bridge they had no means of ingress and egress to and from their farms,* or to Corinne city . . . except as they [backtrack] . . . a distance of several miles. [Emphasis added.]

67 Utah at 571–72, 248 P. at 812. The finding that the old highway was "necessary for ingress and egress" from the landowner's property established the existence and defined the extent of the easement recognized in *Adney.* From the facts of that case, it is evident that the measure of "necessary" was relative: the landowners did not need to show that there was no other means of access, only that the alternative access imposed measurable hardship that was unreasonable under the circumstances. Conversely, it has been held that an abutting property owner cannot recover damages for deprivation of access to a public way so long as there is some alternative means of access to his property that is "adequate and reasonable." *Wynia v. City of Great Falls,* Mont., 600 P.2d 802, 810 (1979). To the same effect is *Jacobson v. State, State Highway Commission,* Me., 244 A.2d 419, 422 (1968), where the Court held:

> The property owner has the right to reasonable access to the public streets but no property right that his travel from his land to his destination or the public's travel to his property shall be in the most direct route possible.

Our interpretation of the abutting landowner's easement of access as being subject to precedent requirements of reasonableness in the circumstances accords with what we consider the better-reasoned opinions on this subject. *E.g., Rexroat v. Thorell,* 89 Ill.2d 221, 60 Ill.Dec. 438, 433 N.E.2d 235 (1982); *Jacobsen v. State, supra; Wynia v. City of Great Falls, supra; Pinellas County v. Austin,* Fla.App., 323 So.2d 6 (1975); *Mosteller v. Southern Railroad Co.,* 220 N.C. 275, 279, 17 S.E.2d 133, 135 (1941). *See also, Bacich v. Board of Control of California,* 23 Cal.2d 343, 366, 144 P.2d 818, 832 (1944) (Traynor, J., dissenting). The property owner's right to preserve the status quo on access to and over abutting highways must be qualified by the public interest in relocating public highways for greater advantage at minimum possible cost and in facilitating the return of land to productive purposes. Thus, the abutting property owner has an easement over the abandoned highway only where (and to the extent that) it is "necessary for ingress and egress" to and from the property under the standard established in *Adney* and elaborated here.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

HALL, C.J., and DURHAM, J., concur.

HOWE, Justice (concurring):

I concur in the majority opinion. I believe that the word "accepting" found in U.C.A., 1943, § 36–1–7 has a special and limited meaning as used there and has nothing to do with the acceptance of warranty deeds.

"Accepting" as used there means acceptance by the public of a common law dedication for a highway made by the owner of the fee. Acceptance is a necessary element of dedication. This is well explained in 26 C.J.S., Dedication, § 34(a) (1956) at 459, where it is written:

> A dedication at common law, like a contract, consists of an offer and acceptance; and subject to some exceptions considered below, the general rule is well settled that a dedication is not binding and conclusive on either party until acceptance, and, of course, this rule applies to the grantee of the party offering to make the dedication. A dedication without acceptance is, in law, merely an offer to dedicate, and such offer does not impose any burdens or confer any rights. Until acceptance, the public acquires no rights, and is subject to no duties by reason of the dedication.

Many of the early roads established in the Territory of Utah were created simply by adjoining owners of land setting their fences back so that a passageway was created for public travel. *Hall v. North Ogden City,* 109 Utah 304, 166 P.2d 221 (1946). When this dedication was "accepted" by the public, a public highway came into being. Two cases of the Supreme Court of the Territory of Utah dealt with acceptance of a dedication of land for a public highway. In *Burrows v. Guest,* 5 Utah 91, 96, 12 P. 847, 849 (1886), the court approved the following jury instruction which used the word "accepting" in the same meaning employed in the statute here in question:

You are further instructed that it is not necessary that a dedication be made by deed or other special form; nor is any special form of *acceptance* of such dedication necessary to be made. It is solely a question of intent on the part of the person to dedicate, and on the part of the public to *accept.* If, therefore, you believe from the evidence that the road in controversy was used by the public as a road, with the knowledge of the plaintiff or his grantor, or other persons claiming the property now claimed by the plaintiff, without objection by such person so claiming the same, with intention to appropriate the same as a public road, and that Salt Lake County has expended money in repairs and improvements of the same, then you are instructed that this evidence may be received by you as tending to show a dedication to and *acceptance* by the public for road purposes. (Italics added.)

Again, in *Wilson v. Hull,* 7 Utah 90, 93, 24 P. 799, 800 (1890) the question arose as to whether the public had "accepted" a certain road. The court quoted with approval from Angell on his work on Highways, § 157 as follows:

> 'It has been said that dedication to be effectual must be *accepted,* and this *acceptance* may be either of a part or of the whole of the land appropriated. Such *acceptance* may undoubtedly be made by a formal act of the body charged with repairing the highway, or by any act on its part sufficiently implying its *acceptance;* but whether such *acceptance* may be made by the public generally, as evidenced by a mere use of the way, is a question upon which the decisions have not been entirely uniform.' (Italics added.)

The court then observed that in the Utah Territory there was no statute requiring a formal acceptance by officers or agents in charge of public roads of land dedicated by owners for highways, and the court held that acceptance could be inferred under some circumstances from the action and use of the public generally without any action

of the body charged with the repair of the public roads. Other later cases in which this Court discussed dedication and acceptance are *Culmer v. Salt Lake City*, 27 Utah 252, 75 P. 620 (1904); *Schettler v. Lynch*, 23 Utah 305, 64 P. 955 (1901); *North Temple Inv. Corp. v. Salt Lake City*, 26 Utah 2d 306, 489 P.2d 106 (1971).

It was in this era in the settlement of our state when common law dedication of land for public roads was commonplace that § 36–1–7 was enacted. Its genesis is 1880 Utah Laws, § 6, Chapter XXIX. So far as this writer has been able to determine, this chapter was the first legislative expression on the subject of public highways in the Territory. Other sections of Chapter XXIX defined public highways, declared certain roads to be public highways, permitted sidewalks to be built and trees to be planted thereon, gave rights-of-way for utilities, and provided for the appointment of road supervisors to maintain the highways supported by a poll tax of two days' work of 8 hours each or $3.00 annually to be paid by every able-bodied man over 21 and under 60 years of age. The first sentence of § 6 reads the same as the first sentence of U.C.A., 1943, § 36–1–7. The second sentence of § 6 has undergone some change of wording but the intended meaning has remained the same. Section 6 as originally enacted read:

> By taking[1] or accepting land for a highway, the public acquire[s] only the right-of-way and incidents necessary to enjoying it and maintaining it. A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil in front to the centre of the highway.

Thus, it appears that the intent of § 6 was to provide that by accepting the dedication of land for a highway, the public acquired only the right-of-way and incidents necessary to enjoying and maintaining it. The fee remained in the dedicator. He could continue to make any use of the dedicated land which was not incompatible with the public easement. *Whitesides v. Green*, 13 Utah 341, 44 P. 1032 (1896). If the dedicator sold his abutting property, title passed to the grantee to the center of the highway; consequently, if the highway were ever abandoned by the public, one-half of the highway would belong to the grantee or the then present owner of the abutting land and not to the original dedicator. *Sowadzki v. Salt Lake County*, 36 Utah 127, 104 P. 111 (1909). *Brown v. Oregon Short Line R.R.*, 36 Utah 257, 102 P. 740 (1909).

In 1951, § 36–1–7 was not the exclusive expression by the Legislature on how the public may acquire property for highways. U.C.A., 1943, § 78–5–4 (now U.C.A., 1953, § 57–5–4) provided that when the owner makes a dedication by use of a map or plat, the recording thereof vests in the public the fee to the streets, alleys and public places shown thereon. This statute was enacted in 1890 (1890 Utah Laws, § 4, Chap. L.) and co-existed for over 73 years with § 36–1–7 which as we have seen was enacted 10 years earlier. We held in *Oregon Short Line R.R. Co. v. Murray City*, 2 Utah 2d 427, 277 P.2d 798 (1954) there was no conflict between them since the one statute deals with a dedication made by an owner who has prepared and recorded a map or plat, and the other statute codifies the common law as regards other streets. In the case of recording a formal map or plat our statutes give the public a fee interest, but in the case of a common law dedication the public acquires merely a right-of-way. See *White v. Salt Lake City*, 121 Utah 134, 239 P.2d 210 (1952).

There was also in 1951 another statute vesting fee title to highway land in the public. U.C.A., 1943, § 78–1–11 (U.C.A., 1953, § 57–1–12) prescribing the form of a warranty deed set out the form to be used and provided: "Such deed when executed as required by law shall have the effect of a conveyance in fee simple to the grantee, his heirs and assigns of the premises therein

---

1. It is not clear whether "taking" meant taking by condemnation since this writer has been unable to find any statutory enactment on the subject of eminent domain before 1884. See Title VII, Part III of the Code of Civil Procedure enacted as Chapter LV, Laws of Utah 1884.

named, together with all the appurtenances, rights and privileges thereunto belonging, ...." This statute, too, co-existed with § 36–1–7 since 1890 and apparently no one has ever before suggested in the reported cases that the word "accepting" found in § 36–1–7 incapacitated the State of Utah and its political subdivisions from receiving a fee simple title when it purchases land for highway purposes by means of a warranty deed and when it is the intent of the grantor and grantee that such an estate pass. Section 78–1–11, like § 78–5–4, should be recognized as a later enacted exception to § 36–1–7.

It is a familiar rule of construction that courts will attempt to give two or more statutes which ostensibly conflict an interpretation that will give meaning and effect to each of them. It is also a rule that when a word of doubtful or ambiguous meaning appears in a statute it will be given a restricted interpretation. The application of both of these rules leads us to defining "accepting" as found in § 36–1–7 to mean accepting a common law dedication made by an owner. This construction gives meaning to that statute but does not impinge upon other ways that land for highways may be acquired by the public, viz., recording of plat or map, or purchase by warranty deed, in which cases fee title vests in the public.

Prior to 1935, California had a statute (Sec. 2631, Political Code) similar to our § 36–1–7. It provided:

By taking or accepting land for a highway, the public acquire[s] only the right-of-way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided.

In *People by Dept. of Public Works v. Thompson,* 43 Cal.2d 13, 271 P.2d 507 (1954) the California Supreme Court held that this statute applied to highway land acquired by deed but did not go as far as to declare that the state and its political subdivisions were without capacity to accept a fee title. In that case the California court construed the various provisions of the deed before it and determined that it was intended to convey only a right-of-way.[2] Five years later in the case of *City of Los Angeles v. Pacific Railway Co.,* 168 Cal.App.2d 224, 335 P.2d 1042 (1959) the court interpreted the Thompson decision to hold that the statute created a presumption that only a right-of-way is conveyed, but that presumption may be refuted by the language of the instrument.

In the instant case, the deed executed and delivered by the appellant and his wife in 1951 to the State Road Commission of Utah was entitled "Warranty Deed" and was in the statutory form prescribed by U.C.A., 1943, § 78–1–11. Furthermore, the deed, by its language, "conveys and warrants in fee simple to the State Road Commission of Utah." Even under the California decisions, the presumption that a right-of-way was intended would be overcome by this clear language and a fee title would pass.

I think any statute which purports to deny the sovereign State of Utah and its political subdivisions the right to acquire the fee title to land by the statutory form of warranty deed should clearly express that intention, and such intention should not be lightly presumed by this Court.

HALL, C.J., and STEWART, J., concur in the concurring opinion of HOWE, J.

---

**2.** In a dissenting opinion written by Justice Edmonds and concurred in by Justice Traynor, they concluded that the word "accepting" meant accepting a dedication.